## Steven E. KRAUS, Plaintiff-Appellant,

v.

## CITY OF WAUKESHA POLICE AND FIRE COMMISSION, Defendant-Respondent.

Supreme Court

*No. 01–1106. Oral argument September 17, 2002.—Decided May 30, 2003.*

2003 WI 51

(Also reported in 662 N.W.2d 294.)

For the plaintiff-appellant there were briefs by *John F. Fuchs, Paul H. Beard,* and *Fuchs Snow DeStefanis, S.C.,* Milwaukee, and oral argument by *John F. Fuchs.*

For the defendant-respondent there was a brief by *Vincent D. Moschella,* assistant city attorney, and *Curt R. Meitz,* city attorney, and oral argument by *Curt R. Meitz.*

An amicus curiae brief was filed (in the court of appeals) by *James R. Korom, Steven B. Rynecki,* and

*von Briesen & Roper, S.C.*, Milwaukee, on behalf of the Wisconsin Chiefs of Police Association, with oral argument by *James R. Korom.*

An amicus curiae brief was filed by *Scott Herrick* and *Herrick, Kasdorf, Dymzarov & Twietmeyer,* Madison, on behalf of the Board of Police and Fire Commissioners of the City of Madison.

¶ 1. DAVID T. PROSSER, J.   This case is before the court on certification pursuant to Wis. Stat. § (Rule) 809.61 (1999–2000).[1] The appellant, Steven E. Kraus (Kraus), seeks reversal of an order from the Circuit Court for Waukesha County affirming a decision by the City of Waukesha Police and Fire Commission to deny Kraus a hearing under Wis. Stat. § 62.13(5)(em), following his reduction in rank from police sergeant to patrol officer before he completed the one-year probationary period for his promotion.

¶ 2.   The issue presented is whether a police officer who is promoted on a probationary basis, but who is thereafter returned to the officer's former rank for failing to successfully complete probation for nondisciplinary reasons, is entitled to a hearing under either Wis. Stat. § 62.13(5)(em) or some other provision of law. In addressing this issue, we must first answer the certified question whether police chiefs and police and fire commissions (PFCs) have the authority to promote officers on a probationary basis.

¶ 3.   We hold that police chiefs and PFCs in Wisconsin are authorized to promote subordinates within a department on a probationary basis, provided that the period of probation is reasonable in duration. This power is inherent in the appointment authority granted

---

[1] All statutory references are to the 1999–2000 version of the Wisconsin Statutes, unless otherwise indicated.

to police chiefs and PFCs by Wis. Stat. § 62.13(4) and buttressed by PFC rule-making authority in Wis. Stat. § 62.13(6). If, during the probationary period following a promotion, a chief concludes that an officer's performance is inadequate or that some other lawful, nondisciplinary reason militates against the officer serving in the higher rank, the chief and PFC may return that officer to the officer's prior rank without a hearing under § 62.13(5)(em). We also conclude that an officer who is promoted on a probationary basis but returned during the probationary period to his or her prior rank for nondisciplinary reasons, does not possess a constitutionally protected property interest in the higher rank that would require an alternative type of due process hearing.

¶ 4.   We therefore affirm the circuit court's decision that the Waukesha PFC proceeded under a correct theory of law when it denied Kraus a § 62.13(5)(em) hearing regarding his reappointment as a patrol officer.

## I. BACKGROUND FACTS

¶ 5.   Officer Steven E. Kraus joined the City of Waukesha Police Department as a police officer on June 4, 1990. On November 24, 1997, Waukesha Police Chief Leslie Sharrock filed a letter with the City of Waukesha Police and Fire Commission (the PFC) indicating his desire to promote Kraus to the position of sergeant, subject to Kraus successfully completing a one-year probationary period. The PFC thereafter approved Sharrock's recommendation during an open PFC meeting, with Officer Kraus in attendance. The PFC's motion expressly stated that Kraus's promotion, along with that of another officer who was concurrently being

promoted to the rank of sergeant, would be subject to successful completion of a one-year probationary period.

¶ 6.   About one week before the end of the probationary period, Chief Sharrock informed both Kraus and the PFC by letters that Kraus had failed to successfully complete probation. The Chief stated that Kraus would not become a regular-status police sergeant but instead be reappointed as a patrol officer, subject to the successful completion of a new six-month probationary period.[2] No specific reason was given for Kraus's failure to successfully complete probation, but the letter to Kraus indicated that he was not precluded from seeking promotion in the future.[3]

---

[2] The Waukesha Police and Fire Commission has abandoned the argument that Kraus would be subject to a new probationary period as a police officer. Kraus had an established property interest in his position as a police officer and that interest could not be compromised without a due process hearing. *See Arneson v. Jezwinski,* 225 Wis. 2d 371, 392–93, 592 N.W.2d 606 (1999).

[3] The November 18, 1998, letter from Chief of Police Leslie A. Sharrock to Sergeant Steven E. Kraus reads in part as follows:

> This letter is to inform you that, on November 23, 1998, I will be advising the Police and Fire Commission that you have not successfully completed the probationary period for regular promotion to the rank of Police Sergeant. At the same time, I will inform the Commission of your reappointment as a Patrol Officer effective November 24, 1998. . . . I want you to know that this action does not preclude you from participating in a future promotional process provided you have met the requirements for consideration outlined for the position.

¶ 7.   On December 3, 1998, Kraus appeared before the PFC to request a "just cause" hearing under Wis. Stat. § 62.13(5)(em).[4] He argued that no authority existed for the Chief and the PFC to promote Kraus on a probationary basis. At Kraus's request, the PFC and the Chief agreed to hold the matter in abeyance until a final decision in *Antisdel v. Oak Creek Police & Fire Commission*, 2000 WI 35, 234 Wis. 2d 154, 609 N.W.2d 464, which was then pending on appeal.

¶ 8.   On May 2, 2000, this court issued its decision in *Antisdel*, but we expressly declined to answer the specific question raised in Kraus's case. *Id.*, ¶ 26. Twenty days later, Kraus renewed the argument that he was entitled to a Wis. Stat. § 62.13(5)(em) hearing regarding his reduction in rank. The PFC denied Kraus's request and granted the Chief's recommendation to return Kraus to patrol officer status. This conclusion was later memorialized in a written decision issued by the PFC. The PFC's July 6 written decision stated that a hearing was not required because Kraus's failure to satisfy probation was due to performance-based reasons, to which § 62.13(5) is inapplicable.

¶ 9.   On June 1, 2000, before the PFC had issued its written decision, Kraus sought a writ of certiorari in the Circuit Court for Waukesha County, J. Mac Davis, Judge, asking the court to order the PFC to give him a due process hearing before returning him to the rank of patrol officer. The circuit court ruled that the PFC

---

[4] Wisconsin Stat. § 62.13(5)(em) provides, in pertinent part:

> No subordinate may be suspended, reduced in rank, suspended and reduced in rank, or removed by the board under par. (e), based on charges filed by the board, members of the board, an aggrieved person or the chief under par. (b), unless the board determines whether there is just cause, as described in this paragraph, to sustain the charges.

proceeded upon a correct theory of law when denying Kraus a § 62.13(5)(em) hearing. The court concurred in the PFC's reasoning and concluded that Kraus was merely a probationary sergeant and that no hearing was necessary because his reduction in rank was for nondisciplinary reasons. Kraus appealed and the court of appeals certified the appeal to this court. We accepted the certification.

## II. STANDARD OF REVIEW

¶ 10.  When we review an application for a writ of certiorari, we review the agency's decision (here the PFC's decision), not the decision of the circuit court. *See State v. Horn,* 226 Wis. 2d 637, 652, 594 N.W.2d 772 (1999). The scope of review is generally limited to whether the agency (1) acted within its jurisdiction; (2) proceeded on a correct theory of law; (3) was arbitrary, oppressive, or unreasonable; or (4) might have reasonably made the order or finding that it made based on the evidence. *Antisdel,* 234 Wis. 2d 154, ¶ 13 (citing *State ex rel. Hennekens v. City of River Falls Police & Fire Comm'n,* 124 Wis. 2d 413, 419, 369 N.W.2d 670 (1985)). Because Kraus also appealed to the circuit court under Wis. Stat. § 62.13(5)(i), which calls for a de novo "just cause" determination by the court, we look solely to the first two factors in certiorari review—namely, whether the PFC had jurisdiction and whether it acted under a correct theory of law. As in *Antisdel,* the real issue is whether the PFC proceeded on a correct theory of law when it determined not to apply Wis. Stat. § 62.13(5). *Antisdel,* 234 Wis. 2d 154, ¶ 13. This is a question we review de novo. *State ex rel. Warren v. Schwarz,* 219 Wis. 2d 615, 629, 579 N.W.2d 698 (1998).

## III. ANALYSIS

¶ 11. In Wisconsin, newly hired police officers are almost always subject to a one-year probationary period. These probationary officers do not have a property interest in their new positions and are usually subject to discharge during the probationary period without a statement of reasons or a determination of just cause. *Kaiser v. Bd. of Police & Fire Comm'rs,* 104 Wis. 2d 498, 501, 503, 505–06, 311 N.W.2d 646 (1981).

¶ 12. In practice, police officers are often promoted on a probationary basis as well.[5] However, in *Antisdel,* this court ruled that when a police officer is promoted subject to probation and then demoted during the probationary period based on *disciplinary* charges, the officer is entitled to a just cause hearing before the PFC under Wis. Stat. § 62.13(5)(em). *Antisdel,* 234 Wis. 2d 154, ¶ 25. We concluded that the *disciplinary* process established in Wis. Stat. § 62.13(5) provides no exception for an officer's probationary status and must be applied, even in the context of probation. *Id.,* ¶ 2.

¶ 13. In the present case, Kraus claims that he, too, is entitled to a "just cause" hearing under Wis. Stat. § 62.13(5)(em) before being returned to his status as a patrol officer, even though his reduction in rank came during the probationary period for promotion. He contends that a § 62.13(5)(em) hearing must be provided before demoting *any* subordinate officer who has completed the initial probationary period as a new hiree. This protection is required, he argues, regardless of the reason for a subordinate's demotion.

---

[5] *See, e.g., City of Madison v. WERC,* 2003 WI 52, ¶ 3, 261 Wis. 2d 423, 662 N.W.2d 318; and *Antisdel v. Oak Creek Police & Fire Comm'n,* 2000 WI 35, ¶ 3, 234 Wis. 2d 154, 609 N.W.2d 464.

¶ 14.   This precise issue was deferred in *Antisdel,* when the court said, "We need not, and do not, decide whether we would reach the same decision if the plaintiff were reduced in rank from probationary sergeant to police officer because he failed to meet the level of performance demanded by his superiors or for some other nondisciplinary reason." *Id.,* ¶ 26. We now address this issue.

A. Statutory Authority for Probationary Promotion

¶ 15.   As a preliminary matter, we note the question certified to this court: "Does a police chief and a police and fire commission have authority to promote police officers within a department on a probationary basis and, if so, pursuant to what authority?"[6]

¶ 16.   Kraus asserts that he was not subject to probation because there is no statute granting either the Chief or the PFC authority to impose a probationary period on newly promoted sergeants. Kraus maintains that, in the absence of express statutory authority for probationary promotion, he attained the permanent rank of sergeant at the moment he was promoted on November 25, 1997.

¶ 17.   We conclude that there is a statutory basis for the PFC to impose probationary periods upon newly promoted officers. Wisconsin Stat. § 62.13(4) grants police chiefs and PFCs broad powers relating to the selection and appointment of subordinates. *See Racine Police & Fire Comm'n v. Stanfield,* 70 Wis. 2d 395, 402, 234 N.W.2d 307 (1975). The language in subsection (4)

---

[6] We did not address this question in *Antisdel* because the disciplinary nature of the job action in that dispute was dispositive of the officer's claim.

and the rule-making authority in Wis. Stat. § 62.13(6) are the source for the Waukesha PFC and Chief Sharrock's shared authority to make promotional appointments on a probationary basis. The fact that Wis. Stat. § 62.13 does not expressly mention probation cannot be interpreted reasonably to mean that the legislature has precluded the use of this common and effective management tool for evaluating candidates. Nowhere has the legislature expressly withdrawn the power of chiefs and PFCs to use probation in promotions.

¶ 18.   We note, first, that Wis. Stat. § 62.13(4)(a) grants chiefs of police the authority and duty to "appoint subordinates subject to approval by the board." Wis. Stat. § 62.13(4)(a).[7] The paragraph further provides that such appointments are to be made by promotion from within "when this can be done with advantage." *Id.* The quoted language anticipates an exercise of judgment: the chief and the PFC are given authority to determine whether qualified officers exist within a department and who among them should be promoted. *See Glendale Prof'l Policemen's Ass'n v. City of Glendale,* 83 Wis. 2d 90, 102–03, 106–07, 264 N.W.2d 594 (1978). The appointing authorities must be vested with reasonable means to help them exercise sound judgment.

¶ 19.   Second, Wis. Stat. § 62.13(6)(a)1. gives the PFC authority to organize fire and police departments and "to prescribe rules and regulations for their control

---

[7] The full language of Wis. Stat. § 62.13(4)(a) provides: "(a) The chiefs shall appoint subordinates subject to approval by the board. Such appointments shall be made by promotion when this can be done with advantage, otherwise from an eligible list provided by examination and approval by the board and kept on file with the clerk."

and management." Wisconsin Stat. § 62.13(4)(c) pinpoints PFC authority to classify positions. Together, these provisions authorize the PFC to establish classifications of employees, including *probationary* employees and *probationary* promotees.

¶ 20.   Third, Wis. Stat. § 62.13(4)(c) grants to the PFC the authority to adopt "rules calculated to secure the best service in the departments" when making appointments. Wisconsin Stat. § 62.13(4)(c) provides:

> For the choosing of such list [of candidates for appointment] the board shall adopt, and may repeal or modify, rules calculated to secure the best service in the departments. These rules shall provide for examination of physical and educational qualifications *and experience,* and may provide such competitive examinations as the board shall determine, and for the classification of positions with special examination for each class. · The board shall print and distribute the rules and all changes in them, at city expense.

Wis. Stat. § 62.13(4)(c) (emphasis added).

¶ 21.   Even though this paragraph's reference to rules focuses on "the choosing of [a] list" (as opposed to a more discretionary promotion process) as a prelude to appointment, it is broad enough to permit the imposition of a probationary period upon persons who are appointed from the list. Moreover, the paragraph cannot be viewed as stripping PFCs of their power to make rules in connection with other appointments "to secure the best service in the departments." The ultimate objective of any method of appointment is to secure high-quality people to serve the public.

¶ 22.   Fourth, both Wis. Stat. § 62.13(4)(c) and (d)[8] address the power to *examine* candidates for appoint-

---

[8] Wisconsin Stat. § 62.13(4)(d) provides in relevant part:

ment. Paragraph (c) speaks of "the classification of positions with special examination for each class." Paragraph (d) was interpreted in *Kaiser*, 104 Wis. 2d at 503, to provide "that boards of police shall examine candidates to determine their qualifications."

¶ 23.   These paragraphs mention examinations as well as the authority of the PFC to set the scope and nature of the examinations. Probation *is* a form of examination, and one that is highly effective in the realm of law enforcement. It allows chiefs and PFCs to ascertain whether newly placed subordinates are suited for the positions for which they have been selected.

¶ 24.   There is a specific reference to probation for law enforcement officers in another statute. *See* Wis. Stat. § 165.85(4)(b). This provision prohibits the appointment of a person as a law enforcement officer, except on a temporary or probationary basis, unless the person has already satisfactorily completed a preparatory program of law enforcement training approved by the Law Enforcement Standards Board and been certified by the Board as being qualified to be a law enforcement officer. *Id.* The principal purpose of this statute appears to be to use probation as a means of enforcing the requirements for law enforcement training. The statute does not require probation for *all* new law enforcement officers because it does not require probation for fully trained and certified officers.

---

The examination, including minimum training and experience requirements, shall be job-related in compliance with appropriate validation standards and shall be subject to the approval of the board and may include tests of manual skill and physical strength. All relevant experience, whether paid or unpaid, shall satisfy experience requirements. The board shall control examinations and may designate and change examiners . . . .

¶ 25. At the same time, however, Wis. Stat. § 165.85(4)(c) authorizes the Law Enforcement Standards Board to fix, by rule, "such other minimum qualifications for the employment of law enforcement . . . officers as relate to the competence and reliability of persons to assume and discharge the responsibilities of law enforcement." Using this authority, the Board could establish the completion of a probationary period as a required qualification.

¶ 26. In any event, Wis. Stat. § 165.85(4)(e) pointedly acknowledges that the statute does not preclude any law enforcement agency "from setting recruit training and employment standards which are higher than the minimum standards set by the board." Wis. Stat. § 165.85(4)(e). This language concedes PFC authority to require probation for recruits, even if they are already certified as qualified.

¶ 27. There has long been a question about the source of authority for probation in the *hiring* of police officers. In *Kaiser*, this court relied upon Wis. Stat. § 165.85(4)(b), noting that there was no claim that Kaiser had the requisite training or status to be hired as other than a probationary officer. *Kaiser*, 104 Wis. 2d at 502 n.2. The court also relied upon the provisions of a collective bargaining agreement between the City of Wauwatosa and its nonsupervisory police officers. *Id.* at 502. There is little doubt that Wis. Stat. § 165.85(4) effectively imposes probation on virtually all new officers in relation to their training and also permits PFCs to require probation to supplement the standards set out in the statute.

¶ 28. Nonetheless, police officer probationary hires predate the enactment of Wis. Stat. § 165.85(4), which took effect in 1970. *See* § 6, ch. 466, Laws of 1969

(effective March 19, 1970).[9] In addition, Wis. Stat. § 165.85(4) applies only to law enforcement officers, not firefighters. Hence, § 165.85(4) may not be cited as the authority for probationary hires for firefighters, even though firefighters are often subject to probation after being hired.[10] Consequently, there must be some additional source of authority for probationary hires for law enforcement officers and firefighters besides § 165.85(4).

¶ 29. The origin of police and fire commissions dates back more than a century. In 1897 the legislature approved Chapter 247, an act to establish a board of police and fire commissioners in cities of the second and third class. The chapter included the following provisions:

> Section 2. After this act goes into effect, no person shall be appointed to any position, either on the police force or in the fire department in any such city except with the approval of the board.
>
> Section 3. As soon as possible after the first members of said board shall enter upon their offices in any city, said *board shall prepare and adopt such rules and*

---

[9] To illustrate, the briefs filed in *Eastman v. City of Madison,* 117 Wis. 2d 106, 342 N.W.2d 764 (Ct. App. 1983), explain that Gerald Eastman began his employment with the Madison Police Department on June 8, 1964. "On June 8, 1965, his initial probationary period of one year ended and he became a permanent, full-time member of the Police Department." Thus, Eastman was hired by the City of Madison on a probationary basis more than five years before Wis. Stat. § 165.85(4) became law.

[10] The plaintiff's brief in *Eastman* stated that the firefighter plaintiff in that case, Thomas P. Hanson, commenced his employment with the City of Madison on March 11, 1962. "After successfully completing the one-year probationary period, he . . . became a permanent [employee] of the Fire Department."

*regulations to govern the selection and appointment of persons to be thereafter employed in either the police or fire department of such city, as in the judgment of said · board shall be adapted to secure the best service for the public in each department.* Such rules and regulations shall provide for ascertaining, as far as possible, the physical qualifications, the educational qualifications, and habits, and the reputation and standing and experience of all applicants for positions, and they may provide for the competitive examination of all applicants, in such subjects as shall be deemed proper, for the purpose of best determining their qualifications for the positions sought. *Such rules and regulations may provide for the classifications of positions in the service and for a special course of inquiry and examination for candidates for each class.* All rules and regulations adopted shall be subject to modifications or repeal by the board, at any time.

§§ 2–3, ch. 247, Laws of 1897 (emphasis added).

¶ 30.   The language in Section 3 was clearly broad enough to authorize probationary appointments. It was part of Wisconsin law approximately eight years before the legislature required probationary periods for most *state* employees. *See* § 9, ch. 363, Laws of 1905.

¶ 31.   In 1921 the legislature consolidated, renumbered, and revised the statute relating to PFCs, creating Wis. Stat. § 62.13. *See* §§ 53–60, ch. 242, Laws of 1921. The revision caused the specific rule-making authority for selection and appointment to become less explicit. Nonetheless, the 1921 revision retained sweeping authority, set out elsewhere in the same statute, "[t]o prescribe rules and regulations for the control and management of said departments." Wis. Stat. § 959–40m (1919); Wis. Stat. § 62.13(6) (1921). Conse-

quently, there is scant evidence that the 1921 legislature intended to narrow the rule-making authority of PFCs.

¶ 32.   We acknowledge that the powers of government agencies are generally limited to those conferred expressly or by fair implication by statute. *See GTE N. Inc. v. Pub. Serv. Comm'n,* 176 Wis. 2d 559, 564, 500 N.W.2d 284 (1993) (citing *Mid-Plains Telephone v. Pub. Serv. Comm'n,* 56 Wis. 2d 780, 786, 202 N.W.2d 907 (1973)). We believe, however, that the authority for probationary hires is fairly implied in the appointment power found in Wis. Stat. § 62.13(4) and buttressed by the rule-making authority in Wis. Stat. § 62.13(6). The power to examine and appoint police officers and firefighters implies authority to use reasonable tools to facilitate the power for lawful objectives.

¶ 33.   Probationary periods have been part of prudent hiring and sound management for many years.[11]

[11] As noted, probationary periods have been part of the hiring process for Wisconsin state employees since at least 1905. *See* Wis. Stat. § 990–9 (Supp. 1906) (the forerunner of Wis. Stat. § 230.28).

In its brief in *Kaiser v. Bd. of Police & Fire Comm'rs,* 104 Wis. 2d 498, 311 N.W.2d 646 (1981), the City of Wauwatosa cited several management texts discussing the importance of probationary periods for new employees to support its position that "probationary employment is a universally accepted concept that is in effect a condition of the hiring process." These include: Benjamin Werne, *Administration of the Labor Contract* (1963); O. Glenn Stahl, *Public Personnel Administration* (1962); *Municipal Personnel Administration* (International City Manager's Association (1960)).

O.W. Wilson discussed probationary periods in his text on Police Administration (1950), saying:

We see no reason why appointing authorities may not rely on probationary promotions as well as probationary hires, using the same statutory authority, because both probationary periods are a reasonable means to implement the appointment power "to secure the best service in the departments." *See* Wis. Stat. § 62.13(4)(c). The practice of promotional probation is consistent with the statement of policy articulated in Wis. Stat. § 165.85(1).[12]

> Probation. Some police administrators fail to recognize probation as an important step in the selection process. While the best testing procedures are highly effective in eliminating the incompetent, the tests have not reached the stage of perfection that precludes the possibility of the appointment of some candidates who are unsuited to police service. The final test must be trial on the job. Full advantage should be taken of the opportunity afforded by the probationary period to eliminate those who demonstrate unfitness in training and on the job. Such elimination is especially important in departments where testing procedures are poor, for it is difficult to remove unqualified officers after they pass the probationary period. A failure to remove incompetent and otherwise unsuited probationers is a mark of weak leadership; a police chief who does not avail himself of this opportunity to complete the selection process cannot complain that he is denied personnel control.

O.W. Wilson, *Police Administration* 353 (1950).

[12] Section 165.85(1) asserts that the administration of law enforcement is a matter of statewide concern and then proclaims:

> The public interest requires that ... standards [of a proper professional character] be established and that this training and education be made available to persons who seek to become law enforcement, tribal law enforcement, jail or secure detention officers, persons who are serving as these officers in a temporary or probationary capacity *and persons already in regular service.*

Wis. Stat. § 165.85(1) (emphasis added). Persons already in regular services include officers who are promoted.

¶ 34. The authority to use probationary periods as part of the appointment process is not undermined by the absence of specific language regarding probation in Wis. Stat. § 62.13(4). Numerous management tools integrally related to appointment, such as interviews, references, and letters of recommendation, are not expressly enumerated in that statute. These tools are not forbidden simply because they are not enumerated.

¶ 35. We suspect the legislature did not provide explicit statutory authority for probationary periods for law enforcement officers before 1970 because the practice of imposing probation developed naturally without legislation. Public employees, like private sector employees, were employed at will until the legislature began to create statutory protections for them. There was no need to authorize probationary periods before these protections were enacted. Later, probationary periods were used in tandem with employment protections because they made statutory employment protections rational.

¶ 36. Kraus's primary argument against PFC authority to promote on a probationary basis is founded upon an incorrect negative inference that is based upon a misinterpretation of applicable law. Kraus points to the language regarding police officer probation found in Wis. Stat. § 165.85. Under sub-section (4), entitled "Required standards," the legislature has outlined various mandatory training and qualification requirements for newly hired law enforcement personnel in the state. In particular, Wis. Stat. § 165.85(4)(b)1. provides:

> No person may be appointed as a law enforcement or tribal law enforcement officer, *except on a temporary or probationary basis,* unless the person has satisfactorily completed a preparatory program of law enforcement training approved by the board and has been

certified by the board as being qualified to be a law enforcement or tribal law enforcement officer. . . . The period of temporary or probationary employment established at the time of initial employment shall not be extended by more than one year for an officer lacking the training qualifications required by the board. The total period during which a person may serve as a law enforcement and tribal law enforcement officer on a temporary or probationary basis without completing a preparatory program of law enforcement training approved by the board shall not exceed 2 years . . . .

Wis. Stat. § 165.85(4)(b)1. (emphasis added).

¶ 37. Kraus contends that, inasmuch as § 165.85(4)(b) requires one year of probation for all newly hired law enforcement officers, the Wisconsin Statutes do not permit probationary status for any officers who are not within one year of having been hired. The use of probation, he argues, is confined to that period.

¶ 38. We disagree. The statute does not *require* that newly hired law enforcement officers go through a one-year probationary period *if* they have fully satisfied state training requirements and been properly certified before they are hired. As a result, there is little force to the argument that the legislature insisted on probation for new law enforcement hires and prohibited probation for everyone else. That argument, of course, would exclude probation for firefighters altogether. Even if the gist of the law enforcement training statute were to *require* probation for all newly appointed law enforcement officers, it would not follow that these are the only circumstances in which probationary appointment is permitted. The statute's silence on the use of probationary periods in other circumstances implies no more

than that state law does not *require* probationary periods for promotional appointments and in certain other contexts.[13]

¶ 39. Public policy strongly supports allowing chiefs of police and PFCs to use probationary promotions. Probationary periods are an effective means of securing quality law enforcement in this state. As we first expressed in *Kaiser* when analyzing Wis. Stat. § 62.13(4), "There is no doubt that the use of a probationary period is an excellent means of examining candidates and is well-suited to securing the best service available. It enables the board to better evaluate a potential officer's skill and character. Probation is a continuation of the hiring process." *Kaiser,* 104 Wis. 2d at 504.[14] While the analysis in *Kaiser* involved newly hired police officers, we view probation as a continua-

---

[13] This statutory silence may be contrasted with Wis. Stat. §§ 230.28(1)(a) and 230.28(1)(am), which together provide that a state public employee promoted to a supervisory position must serve a one-year probationary period, unless waived after six months. During this probationary period, "dismissal may be made at any time" without cause. Wis. Stat. § 230.28(1)(a), (am).

[14] One commentator recently wrote:

> No matter how careful a department has been in selecting its new personnel, there is a continuing need for quality control. Probably the most valuable technique for determining a rookie's suitability for police service is a trial period on the job. Police managers and seasoned first-line supervisors firmly believe (almost as an article of faith) that a probationary period is an essential element in the personnel screening process. It gives them the necessary time to judge the new employee in terms of ability and character. It also allows them to assess the recruit's capacity to cope with the demands of police work and to detect deficiencies that manifest themselves only under actual working conditions.

Harry W. More, et al., *Effective Police Supervision* 188 (3d ed. 1999).

tion of the entire appointment process, including promotion, not just the initial hiring process.

¶ 40. Kraus maintains that *Kaiser*'s rationale is inapplicable because a chief has ample opportunity to observe candidates for promotion who have previously worked within the department and to adequately evaluate their skills, performance, and competence based on this observation. Thus, he reasons, it is not necessary, as a matter of public policy, to subject promotees to probation in order to promote in a manner "calculated to secure the best service in the departments."

¶ 41. We find Kraus's depiction of the rigors of selecting qualified individuals to serve in a supervisory capacity in law enforcement too simplistic. Although a lot may be gleaned from an individual's history as a patrol officer, it is difficult to assess with any certainty how the officer's traits and knowledge at the lower rank will translate into the skills needed to perform well as a sergeant. The higher position requires skills, such as leadership and supervision, that may not be manifested during an officer's tenure on patrol duty. "The probationary period is definitely a part of the promotional process and may very well be the only real safeguard a department has against being saddled with officers who are unsuited to fill supervisory roles." Benjamin Shimberg & Robert J. di Grazia, *Promotion, in Police Personnel Administration* 122 (O. Glenn Stahl & Richard A. Staufenberger eds., 1974).

¶ 42. Some years ago, the superintendent of the Ohio State Highway Patrol observed that, prior to the advent of police schools, field instruction constituted "practically the whole training process." George Mingle, *Police Personnel Evaluation and Development*, 30 J. Crim. L. & Criminology 277, 277 (1946). He explained

that the Highway Patrol had developed a checklist of criteria by which to evaluate officers.[15]

---

[15] The checklist included the following 31 factors:

1. Appearance

2. Health and physical condition

3. Conduct and deportment

4. Judgment

5. Interest in the organization and its work

6. Fellowship and association

7. Discipline

8. Initiative and self-reliance

9. Resourcefulness

10. Alertness and observation

11. Loyalty

12. Courage

13. Honesty and honor

14. Leadership

15. Effort

16. Knowledge of the patrol area

17. Knowledge and conformity with policies and procedures

18. Dealing with the public

19. Cooperation with other departments and officials

20. Organization and direction of work

21. Desk duty

22. Ability to make reports

23. Ability as an investigator

24. Scope of activity

¶ 43. The superintendent observed that some of the factors, like honesty, loyalty, and courage, "appear to be strictly personal qualities which have a direct bearing on a [person's] value as a police officer." *Id.* at 283. "Others have to do with some particular skill or ability[]." *Id.* "The qualities of leadership, organization and direction of work, and discipline, are some which . . . *particularly apply to supervisory officers.*" *Id.* (emphasis added).

¶ 44. We agree with the description of sergeants supplied by the Waukesha PFC, as stated in its brief before this court:

> Sergeants who are promoted from the ranks face a difficult transition. They go from labor to management. They are now asked to assert discipline and control over employees who were recently their equals. They are asked to assign officers to different tasks, some desirable, some not so desirable. They must do performance evaluations for the patrol officers under their command. They must order their former fellows to re-write poorly written reports. They must tell them when, where, and how long they can take lunch breaks. They may order them to increase traffic enforcement activities. They must properly supervise on-scene crime investigations.

25. Operation of motor equipment

26. Maintenance of motor equipment

27. Maintenance of post equipment

28. Maintenance of uniform and personal equipment

29. Preparation and presentation of court cases

30. Use of firearms

31. General efficiency.

George Mingle, *Police Personnel Evaluation and Development,* 30 J. Crim. L. & Criminology 277, 282–83 (1946).

¶ 45.   The Waukesha PFC's description is confirmed in a recent text on police supervision, which states:

> Many sergeants (due to insecurity, immaturity, poor training, or the inability to cope with criticism) fear the thought of judging their subordinates and use all sorts of excuses to avoid it. They claim that it takes too much time away from their other duties, strains personal relationships, is ignored by management, and is almost always perceived by fellow employees as an unwarranted intrusion in their professional lives. These rationalizations are unacceptable. Sergeants must be prepared to accept responsibility for meaningful performance appraisal.

Harry W. More, et al., *Effective Police Supervision* 188 (3d ed. 1999).

¶ 46.   The evaluation of supervisory personnel may be more difficult than the evaluation of patrol officers. O.W. Wilson (1900–1972), the legendary Dean of the School of Criminology at the University of California, Berkeley, and Superintendent of Police in Chicago, wrote that the complexity in the evaluation of police personnel "derives from the fact that they involve the appraisal of human qualities." O.W. Wilson, *Problems in Police Personnel Administration,* 43 J. Crim. L. & Criminology 840, 840 (1953). He added:

> The need for more than average intelligence in police service stems from the necessity of dealing with extremely complex situations and of matching wits with malefactors, some of whom are extremely intelligent though frequently otherwise deficient. The need for high ethical standards springs from the nature of police work; it involves dealing with many persons who are ethically deficient; it also frequently presents unusual opportunities and temptations that require more

> than average moral stamina to withstand. The need for emotional stability arises from the grave nature of the responsibilities that are imposed on policemen and the authority that is theirs. The need for a suitable personality grows from the fact that the principal duties of policemen involve dealing with other persons—getting them to conform to regulations and to do what the policeman wants with minimum friction and resentment.

*Id.* at 841.

¶ 47.   These passages underscore the value of probation in evaluating both supervisors and officers and the reasonableness in doing so to effect statutory objectives.

¶ 48.   To sum up, pre-employment training and non-supervisory patrol duty do not necessarily predict a person's actual performance in a supervisory capacity. We conclude that Wis. Stat. §§ 62.13(4) and 62.13(6), as well as sound public policy, support probationary promotions in municipal police departments.

## B. Due Process Hearings For Reductions In Rank— Constitutional Claims

¶ 49.   Having concluded that chiefs and PFCs possess authority to promote officers on a probationary basis, we turn to the question whether these officers are entitled to a due process hearing if they are returned to their previous rank, during their probationary period, *for nondisciplinary reasons.* A law enforcement officer seeking such a hearing must rely on some constitutional protection or statutory right if the hearing is not required by a collective bargaining agreement.

¶ 50.   The constitutional basis for a due process hearing for public employees was described in *Board of Regents v. Roth,* 408 U.S. 564 (1972). The Court ex-

plained that the requirements of procedural due process apply to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. *Id.* at 569. When these protected interests are implicated, the right to some kind of prior hearing is paramount. *Id.* at 569–70. To determine whether due process arguments apply, we look to the nature of the interest at stake. *Id.* at 571–72.

¶ 51. An employee's "liberty" interest may involve the employee's standing in the community. *Id.* at 573. Where a "person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau,* 400 U.S. 433, 437 (1971). *But see Weber v. City of Cedarburg,* 129 Wis. 2d 57, 73, 384 N.W.2d 333 (1986) ("Reputation by itself is neither liberty nor property within the meaning of the due process clause of the fourteenth amendment."). In such a case, a due process hearing will accord the employee an opportunity to refute the charge. *Roth,* 408 U.S. at 573.

¶ 52. In *Roth,* no charges were leveled against David Roth when his contract as a professor was not renewed. *Id.* No reason for the employee's non-retention was given. *Id.* at 568. The Court concluded that Roth had no right to a hearing on the decision not to rehire him, because the government had not made any charge that might damage his standing and association in the community. *Id.* at 573.

¶ 53. In this regard, Kraus's position is similar to Roth's. Chief Sharrock did not level any charges of misconduct, dishonesty, or immorality against Kraus. The *Roth* court stated that, "It stretches the concept too far to suggest that a person is deprived of 'liberty' when

511

he simply is not rehired in one job but remains as free as before to seek another." *Id.* at 575. Likewise, a law enforcement officer's "liberty" interest is not implicated if the officer is returned to his former rank, during a probationary period, when the chief merely determines that the officer has not satisfied the chief's requirements for a permanent promotion. Kraus's reduction in rank for nondisciplinary reasons did not impair any "liberty" interest he had, and he was not entitled to a due process hearing on that basis.

¶ 54.　　The *Roth* Court also examined Roth's claim that he had been deprived of a property interest. It acknowledged that the Fourteenth Amendment protects a public employee against the deprivation of an acquired property interest without due process safeguards, but it stated: "To have a property interest in a benefit, a person must clearly have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577.

¶ 55.　　The Court declared that the existence of a property right is determined by state law. *Id.* at 577; *see also Bishop v. Wood,* 426 U.S. 341, 344 (1976); *Milwaukee Dist. Council 48 v. Milwaukee County,* 2001 WI 65, ¶ 50, 244 Wis. 2d 333, 627 N.W.2d 866. Roth's property interest in his employment was created and defined by the terms of his appointment. *Roth,* 408 U.S. at 578. His appointment was for one year. *Id.* It did not provide for contract renewal absent "sufficient cause." In these circumstances, the Court said, Roth "did not have a *property* interest sufficient to require the University authorities to give him a hearing when they declined to renew his contract of employment." *Id.* (emphasis added).

512

¶ 56. Kraus's situation is again similar to Roth's. Kraus had no right to a promotion, and when he was promoted to sergeant, his promotion was conditioned upon his successful completion of probation.[16] Kraus had a unilateral expectation that his promotion would be permanent, but he did not have an entitlement to that promotion. He fundamentally misconstrues the scope of the property interest that he obtained by virtue of becoming a permanent police officer.[17] Kraus possesses a property interest *only* in his continued employment as a patrol officer, *not* in the rank of sergeant. *See Roth,* 408 U.S. at 578 (holding that the terms of a public employee's appointment secured no interest in re-employment the following year, that such employee had only an abstract interest in being rehired); *Kaiser,* 104 Wis. 2d at 505 (holding that a probationary police officer under § 165.85(4)(b) had no more than a unilateral expectation of fulfilling the year and being hired as a permanent officer).

---

[16] The record indicates that Kraus was in attendance during the November 24, 1997, meeting at which the PFC approved his promotion subject to the probationary term. Therefore, Kraus knew that his promotion was contingent on his successful completion of the probationary period, which he does not dispute.

[17] Kraus is in error to cite to *Schultz v. Baumgart,* 738 F.2d 231 (7th Cir. 1984), to support his contention. *Schultz* dealt with an officer's termination from the police force, not a reduction in rank. *Id.* at 233. Moreover, the officer involved was not a probationary employee and therefore had long since obtained a property right in the position from which he was terminated. *Id.* at 234. These distinctions are critical, because there is a precision required in identifying the type of continued employment to which a police officer has a reasonable and non-unilateral expectation.

¶ 57. It is only after an officer completes the probationary period for a position, including a promotion, that a property interest arises in that position. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538–41 (1985). Thus, Kraus must look for a statutory right to a hearing because he cannot rely on a constitutional protection on the facts of this case.

C. Due Process Hearing For Reduction In Rank— Statutory Claim

¶ 58. Kraus asserts the right to a hearing under Wis. Stat. § 62.13(5). This provision spells out the procedure for "Disciplinary Action Against Subordinates." Wisconsin Stat. § 62.13(5)(em) provides, in part, that "No subordinate may be suspended, *reduced in rank,* suspended and reduced in rank, or removed by the board under par. (e), *based on charges* filed . . . *unless the board determines whether there is just cause,* as described in this paragraph, *to sustain the charges."* Wis. Stat. § 62.13(5)(em) (emphasis added).

¶ 59. In *Antisdel,* we analyzed the factors in the statute to determine if probationary sergeant James Antisdel was entitled to § 62.13(5)(em) protections. Tracking the statute's language, we stated, "Wisconsin Stat. § 62.13(5)(em) requires that an employee seeking the procedural protections of that section [1] be a 'subordinate' [2] who 'is suspended, reduced in rank, . . . or removed . . . [3] based on charges [4] filed . . . by the chief.' " *Antisdel,* 234 Wis. 2d 154, ¶ 19. We concluded that Antisdel satisfied all the factors.

¶ 60. Antisdel was on probation, but there was no dispute that he was disciplined.[18] This court determined that an officer who is subjected to "a disciplinary charge" fits within the boundaries of Wis. Stat. § 62.13(5)(em), even if the officer has probationary status. *Antisdel,* 234 Wis. 2d 154, ¶ 25. This conclusion is consistent with the observation in *Larson v. City of Tomah,* 193 Wis. 2d 225, 532 N.W.2d 726 (1995), that:

> Under sec. 62.13(5), every police officer who is disciplined by a superior in the department is entitled to have the disciplinary action reviewed by the city's police and fire commission. If the commission sustains the disciplinary action, it must make written findings and determinations. Sec. 62.13(5)(f). The aggrieved officer may then appeal from the commissioner's order to the circuit court. Sec. 62.13(5)(i).

*Id.* at 231–32. It is also consistent with the need to provide an opportunity to vindicate an employee's "liberty" interest, as discussed in *Roth. Roth,* 408 U.S. at 573.

¶ 61. Kraus contends that he, too, satisfies the factors in Wis. Stat. § 62.13(5)(em) and should have been afforded a "just cause" hearing.

¶ 62. As to the first factor, Kraus was clearly a "subordinate," as that term has come to mean all police officers besides the chief of police. *See Kaiser,* 104 Wis. 2d at 503; *see also Antisdel,* 234 Wis. 2d 154, ¶ 20. Second, Kraus was "reduced in rank" as that phrase is

---

[18] Antisdel was disciplined for allowing a colleague to use his Oak Creek address so that the colleague's child could enroll in Oak Creek High School without paying the nonresident tuition. *Antisdel,* 234 Wis. 2d 154, ¶ 5. He was informed of this charge in a memorandum in which he was accused of "unprofessional" conduct and asserted that he violated a specific department policy. *Id.*

understood in the context of § 62.13(5)(em). *See Antisdel,* 234 Wis. 2d 154, ¶¶ 21–22. In addition, Kraus's demotion was recommended in writing by the Chief. Consequently, if the Chief's letter constituted a "charge," the fourth factor was met. In short, the applicability of the statute appears to hinge on whether "charges" were filed against Kraus.

¶ 63.   Wisconsin Stat. § 62.13(5)(a), (b), (c), (d), (e), (em), (h), (i), and (j) all refer to "charges." The term is not defined, but Kraus contends that it should be interpreted expansively to include all determinations leading to demotion or a negative job action. We disagree.

¶ 64.   The term "charges" commonly denotes an accusation of misconduct or of a violation of laws, rules, or policies. The contextually relevant dictionary definition of the term is "a claim of wrongdoing; an accusation." *The American Heritage Dictionary of the English Language* 322 (3d ed. 1992). Evaluating a person's job performance as unsatisfactory or not up to expectation, or otherwise determining that a person is not fully suited to a supervisory position, is quite different from "charging" a person with some breach of duty or violation of a rule or order.

¶ 65.   The statute itself is captioned "Disciplinary Actions Against Subordinates." This title implies a distinction between disciplinary actions and nondisciplinary actions. In *Kaiser,* we noted that "Kaiser was not disciplined; he was terminated as not suited for service as a police officer." *Kaiser,* 104 Wis. 2d at 503.[19] We went on to say that Wis. Stat. § 62.13(5) "applies to disciplin-

---

[19] In *Hussey v. Outagamie County,* 201 Wis. 2d 14, 548 N.W.2d 848 (Ct. App. 1996), the court of appeals appears to have placed a different interpretation on Wis. Stat. § 62.13(5). The court quoted the same sentence from *Kaiser,* i.e., "Kaiser was

ary actions." *Id.* at 502; *see also Eastman v. City of Madison,* 117 Wis. 2d 106, 115, 342 N.W.2d 764 (Ct. App. 1983) ("Section 62.13(5) on its face only applies to proceedings of a disciplinary nature.").[20]

not disciplined; he was terminated as not suited for service as a police officer." Then it stated: "This sentence in *Kaiser* is actually an inaccurate characterization of the statute. A reading of § 62.13(5) reveals that among the *disciplinary* choices are suspension, demotion or removal. *See* § 62.13(5)(e)." *Id.* at 20 (emphasis added).

Whether a job action is "disciplinary" is not determined by the consequences of the action, such as suspension, reduction in rank, or removal. It is determined by whether a "charge" is filed by the chief to impose a penalty.

A job action that is not disciplinary may still require a due process hearing if the affected employee has a protected property interest, but the due process hearing need not conform to the dictates of Wis. Stat. § 62.13(5)(em). *Schultz v. Baumgart,* 738 F.2d 231, 236 (7th Cir. 1984). We disavow any language in *Hussey* that implies otherwise.

[20] In *Eastman,* the plaintiffs were removed as city employees when they violated Madison's residency ordinance. The court stated that the ordinance was not a disciplinary provision. "Appellants were not disciplined. Appellants were ineligible for employment because they did not reside in the city. Section 62.13(5) is inapplicable to terminations which are not disciplinary." *Eastman,* 117 Wis. 2d at 115.

It must be stressed that the two city employees in *Eastman* both received an evidentiary hearing, referred to as a predetermination hearing, because they had acquired property interests in their employment. *Id.* at 110. They never sought certiorari review to test whether the evidence of their non-residency was sufficient. Instead, they sought declaratory relief to order their reinstatement. *Id.* at 109. Consequently, in deciding that the terminations in *Eastman* were not disciplinary, the court was not depriving the employees of a due process hearing. It was

¶ 66. The statute speaks of adverse personnel actions that may be taken "as a penalty" when "charges are sustained" against "the accused." Wis. Stat. § 62.13(5)(a), (c), (e). Paragraph (em) then outlines the standards for finding "just cause" to sustain the charges, and it repeatedly refers to whether rules and orders were "violated" by the disciplined subordinate.[21] This language clearly points to proceedings based upon allegations of misconduct or rule violation. Hence, while

---

determining that no hearing was required under Wis. Stat. § 62.13(5). *Id.* at 115. Because paragraph (em) was added to Wis. Stat. § 62.13(5) in 1993, ten years after *Eastman* was decided, the question of whether non-residency, in violation of a specific rule or ordinance, would today require a § 62.13(5)(em) hearing, is a closer question. *See* Wis. Stat. § 62.13(5)(em)2.

[21] According to Wis. Stat. § 62.13(5)(em):

> In making its determination [of just cause to sustain the charges], the board shall apply the following standards, to the extent applicable:
>
> 1. Whether the subordinate could reasonably be expected to have had knowledge of the probable consequences of the alleged conduct.
>
> 2. Whether the rule or order that the subordinate allegedly violated is reasonable.
>
> 3. Whether the chief, before filing the charge against the subordinate, made a reasonable effort to discover whether the subordinate did in fact violate a rule or order.
>
> 4. Whether the effort described under subd. 3 was fair and objective.
>
> 5. Whether the chief discovered substantial evidence that the subordinate violated the rule or order as described in the charges filed against the subordinate.
>
> 6. Whether the chief is applying the rule or order fairly and without discrimination against the subordinate.

Kraus argues that the *Antisdel* decision cannot be cited for the proposition that officers demoted for nondisciplinary reasons are not protected by § 62.13(5), the statute itself can be cited for that proposition.[22]

¶ 67.  Quite simply, Kraus was not "charged" with violating any rule. He was returned to his former rank before his probationary period ended for performance reasons. This action was taken because Kraus did not satisfy his chief's expectations for him as a police sergeant. Similar to the officer in *Kaiser,* Kraus was judged as unsuited for service as a police sergeant. *See Kaiser,* 104 Wis. 2d at 503 ("Kaiser . . . was terminated as not suited for service as a police officer").

¶ 68.  After *Antisdel,* we cannot interpret every suspension, reduction in rank, or removal as "discipline" without emasculating the concept of probation and

---

7. Whether the proposed discipline reasonably relates to the seriousness of the alleged violation and to the subordinate's record of service with the chief's department.

[22] The legislature is free to require that nondisciplinary bases for negative job actions against employees be reviewed in a hearing before the PFC or some other body. In fact, the legislature has done something close to this in a comparative statute, Wis. Stat. § 59.26(8)(b), which applies to the demotion, suspension, and dismissal of county deputy sheriffs. This statute expressly provides for a hearing on both disciplinary issues and matters related to a deputy's inability to competently perform his or her duties. Notably, § 59.26(8)(b) also directs county law enforcement departments to apply the same standards of just cause outlined in § 62.13(5)(em).

In addition, the fact that the legislature included incompetence in § 59.26(8) suggests that the absence of any reference to nondisciplinary matters in § 62.13(5) means that nondisciplinary matters such as incompetence should not be presumed to fall within the ambit of disciplinary actions in the section.

making logically inexplicable an officer's removal without hearing on such grounds as a budgetary shortfall. Hearings are required for some negative job actions that are not disciplinary, especially for subordinates who have an established property interest, but these hearings are not governed by Wis. Stat. § 62.13(5)(em).

■

¶ 69.   In sum, disciplinary charges were not levied against Kraus. Upon recommendation of the Chief, the PFC determined that Kraus's performance was not equal to the performance it expected of its supervisory officers. This largely unstated assessment was not a disciplinary "charge" and thus Kraus's reduction in rank was not a "penalty." Consequently, Wis. Stat. § 62.13(5) did not apply to the PFC's decision, and no "just cause" hearing under Wis. Stat. § 62.13(5)(em) was required.

## D. The Waukesha PFC Rule

¶ 70.   Even if PFCs have the general authority to promote on a probationary basis, Kraus disputes that the Waukesha PFC sufficiently invoked this authority in its rules.

¶ 71.   The Waukesha PCF has promulgated a set of Departmental Rules to govern its actions, including Rule 25, entitled "Appointment and Promotional Procedures."[23] Rule 25 delineates each of the available ranks within the department. Then, under a section headed "General Information," the Rule provides: "1 Probationary periods for each of the above positions,

---

[23] Waukesha Police Departmental Rule 25 was read verbatim into the record by counsel for Kraus during the May 22, 2000, proceeding before the PFC regarding Kraus's request for a just cause hearing. The veracity of the contents of this rule is undisputed by the parties in this action.

except for 'Temporary Assignments,' will be in accordance with current labor contracts and/or as prescribed by the Chief of Police." Police sergeants in Waukesha are not subject to a collective bargaining agreement. Thus, Rule 25 provides that probationary periods for sergeants and other supervisory ranks will be "as prescribed by the Chief of Police."

¶ 72.   Kraus maintains that the preceding language from PFC Rule 25 is insufficient to serve as a rule governing probationary promotions. He notes that a separate Departmental Policy on the subject of promotion makes no mention of probationary periods. According to Kraus, this Policy states: "The Chief of Police shall determine the effective date of the promotion and the specific assignment if not previously announced in the vacancy notice. Each promotion shall be contingent upon the candidate(s) successfully passing a physical examination and a drug screen as well as being approved by the Fire and Police Commission."

¶ 73.   The Departmental Policy statement that promotions are contingent upon successfully completing a physical exam and drug test is not an exhaustive enumeration of the criteria upon which promotion may be conditioned. It may not and does not supersede the PFC rule. Furthermore, the Policy statement requires that promotions be approved by the PFC, and may be read as incorporating any approved examination requirements outlined in Wis. Stat. § 62.13(4)(c) and (d). Finally, although Rule 25 is not detailed, it unambiguously states that the Chief may prescribe the terms of probation when promotions are made. Consequently, Kraus's contention that the Waukesha PFC rule is inadequate is without merit. The fact that the rule gives very broad discretion to the Chief of Police does not render the rule insufficient.

¶ 74.  We are sensitive to the concern that Rule 25 provides no time limit to the probationary periods set by the Chief. Considering that the authority to promote on a probationary basis is inherent in the appointment power and fairly implied by Wis. Stat. § 62.13(4), rather than expressly provided in the statute, the authority exercised must be reasonable. One factor of reasonableness is the duration of the probationary period. Clearly, a probationary period that extends indefinitely, or for an inordinate length of time, or that may be renewed indefinitely, could effectively restrict an officer from ever achieving the permanent rank of sergeant. Such a practice could take the inherent appointment authority too far. How reasonableness will operate on the margins, we need not and do not decide. We conclude only that a one-year probationary period for an officer who is newly promoted to the rank of sergeant is a reasonable use of the appointment authority in Wis. Stat. § 62.13(4).

¶ 75.  In sum, we conclude that Rule 25 of the Waukesha PFC Rules sufficiently invokes the authority granted under Wis. Stat. § 62.13(4) for chiefs of police and PFCs to promote on a probationary basis.

## IV. CONCLUSION

¶ 76.  Wisconsin Stat. § 62.13(4)(a) and (c) grant Wisconsin police chiefs and police and fire commissions the authority to promote subordinates subject to. a probationary period that is reasonable in duration. The authority is buttressed by the broad rule-making authority given to PFCs under Wis. Stat. § 62.13(6). Using this statutory authority, the Waukesha Police and Fire Commission has developed Departmental Rule 25,

which grants its police chief the ability to establish probationary periods for supervisory personnel.

¶ 77.   We hold that Wis. Stat. § 62.13(5)(em), by its very terms, applies only to *disciplinary* actions that lead to the suspension, reduction in rank, or removal of police officers. Steven Kraus was not disciplined. In addition, a municipal police officer promoted on a probationary basis has no more than a unilateral expectation of being permanently appointed to that higher rank and, therefore, does not possess a property interest in that position. A chief and PFC may demote a probationary promotee for nondisciplinary reasons without either a hearing under § 62.13(5)(em) or a hearing that satisfies constitutional due process. Therefore, the PFC was not obligated to afford Steven Kraus a just cause hearing when it approved the Chief's determination that Kraus did not successfully complete his probationary period as a newly promoted sergeant.

*By the Court.*—The decision of the circuit court is affirmed.

¶ 78. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE (*dissenting*). This court releases two decisions today[1] that, read together, hold that when a police officer or firefighter is promoted contingent upon the successful completion of a period of probation, the promotion may be denied for a completely false, irrational, or unsubstantiated reason before the end of the probationary period, even if:

(1)·   the actual reason for denying the promotion is disciplinary and is subject to the just cause

---

[1] I refer to the present case and *City of Madison v. Wisconsin Employment Relations Commission,* 2003 WI 52, 261 Wis. 2d 423, 662 N.W.2d 318.

provisions of Wis. Stat. § 62.13(5)(em); and

(2)    a collective bargaining agreement negotiated pursuant to Wis. Stat. § 111.70 requires that the denial be reasonable.

¶ 79.    In the present case, this court holds that the just cause protections of Wis. Stat. § 62.13(5)(em) apply only to "disciplinary" actions that lead to the reduction in rank of police officers, citing *Antisdel v. Oak Creek Police & Fire Commission,* 2000 WI 35, 234 Wis. 2d 154, 609 N.W.2d 464, not to "nondisciplinary actions" such as the failure to successfully complete probation due to poor performance. Furthermore, according to the majority opinion, the officer in question, Steven Kraus, was not "disciplined" and thus not entitled to a just cause hearing.[2]

¶ 80.    In short, the language of Wis. Stat. § 62.13(5) alone does not resolve whether just cause hearings are available to officers returned to their prior rank for "nondisciplinary" reasons. The statute can be read to support both Kraus's interpretation and the majority opinion's interpretation. Given this ambiguity, I conclude that Kraus's interpretation must prevail. The distinction drawn by the majority between disciplinary and nondisciplinary is illusory. Police chiefs and Police and Fire Commissions can avoid just cause hearings in all cases where a promoted officer is returned to his prior rank before completing a period of probation, as a result of this decision, by simply labeling the reason for the return to prior rank "nondisciplinary." This decision therefore effectively overrules *Antisdel.*

¶ 81.    The majority opinion asserts that the plain language of Wis. Stat. § 62.13(5)(em) compels its con-

---

[2] Majority op., ¶ 77.

clusion that a police officer who is promoted on a probationary basis and thereafter returned to his former rank for "nondisciplinary" reasons is not entitled to a just cause hearing. According to the majority, the language of § 62.13(5) "clearly"[3] refers only to situations in which an officer's reduction in rank results from a "charge"[4] and the adverse personnel action is a "penalty"[5] for "an accusation of misconduct or of a violation of laws, rules or policies."[6] Therefore, according to the majority opinion, Kraus is not entitled to a just cause hearing: he was returned to his former rank for performance reasons and not "charged" with violating any rule; he was not subject to "charges," no penalty was imposed on the basis of an accusation of misconduct or of a violation of laws, rule or policies; and he was not "disciplined."[7]

¶ 82. I do not agree that the language of § 62.13(5)(em) so clearly affords greater protection to officers who fail to complete their period of probation for "disciplinary" reasons than those officers who do not complete probation for "nondisciplinary" reasons. To my mind, the language of § 62.13(5) can just as easily be read to provide just cause hearings for officers returned to their prior rank for "nondisciplinary" reasons, before completing probation.

¶ 83. The majority opinion rests its position to a large extent on the word "charges" found in the statute. To understand what is meant by "charges," the majority

---

[3] *Id.,* ¶ 66.

[4] *Id.,* ¶¶ 62–64.

[5] *Id.,* ¶ 66.

[6] *Id.,* ¶ 64.

[7] *Id.,* ¶ 67.

opinion resorts to the dictionary definition of the word and concludes that it refers to a claim of wrongdoing *or* an accusation.[8]

¶ 84. This definition of the word "charges" does not, however, render the statute inapplicable to Kraus. Here, the police chief made "an accusation" that Kraus "[did] not successfully complete[] the probationary period for regular promotion to the rank of Police Sergeant."[9] Moreover, not successfully completing the probationary period, that is, incompetence, implicates wrongdoing. According to the dictionary, wrongdoing means doing wrong. A person who does not do a job competently is doing something wrong.

¶ 85. In addition, nothing in the language of § 62.13(5)(em) itself limits just cause hearings to accusations of violations of laws, rules, or policies. The section reads:

> No subordinate may be suspended, reduced in rank, suspended and reduced in rank, or removed by the board under par. (e), based on charges filed by the board, members of the board, an aggrieved person or the chief under par. (b), unless the board determines whether there is just cause, as described in this paragraph, to sustain the charges.[10]

¶ 86. Finally, the use of words like "charges" and "accused" and "violated" in other paragraphs under Wis. Stat. § 62.13(5) is not necessarily evidence that the statute applies only to allegations of misconduct or rule violations. Wisconsin Stat. § 59.26, which governs the demotion of incompetent deputy sheriffs during proba-

---

[8] *Id.,* ¶ 64 (quoting *American Heritage Dictionary of the English Language* 322 (3d ed. 1992)).

[9] *Id.,* ¶ 6 n.3.

[10] Wis. Stat. § 62.13(5)(em).

tionary periods, proves this point. Section 59.26(8)(b)2, like § 62.13(5), speaks in terms of "the accused" and "charges"[11] even though § 59.26 governs a just cause hearing on both disciplinary issues *and* issues related to a deputy's inability to competently perform his or her duties.[12] Even when a demotion is based on incompetence, § 59.26 requires that "just cause" be shown to "sustain the charges," and it repeatedly refers to rules and orders being "violated" by the subordinate, just as § 62.13 does.[13]

¶ 87.   Thus, there is nothing about the statutes' use of the word "charges" that necessarily prevents Kraus from obtaining a just cause hearing in this case.

¶ 88.   Furthermore, there is additional support in the language of Wis. Stat. § 62.13(5)(em) for Kraus's conclusion that no reduction in rank should be imposed unless the board determines there is "just cause" to

---

[11] *See, e.g.,* Wis. Stat. § 59.26(8)(b)2. ("The grievance committee shall immediately notify *the accused* officer of the filing of *the charges* and on request furnish the accused officer with a copy of the same."); § 59.26(8)(b)5m. ("No deputy may be suspended, demoted or discharged by the grievance committee under subd. 3 or 5., based on *charges* filed by the sheriff . . . unless the committee determines whether there is just cause, as described in this subdivision, to *sustain the charges*."); § 59.26(8)(b)5m.b. (committee determination should be based on consideration of "whether *the rule or order* that the deputy *allegedly violated* is reasonable").

[12] The majority opinion concludes that that the absence of similar express language in § 62.13 relating to incompetence of police officers suggests that grounds of incompetence for demoting police officers are not subject to a just cause hearing. While this inference is reasonable and supports the majority opinion's reading of the statute, these other parts of Wis. Stat. § 59.26 contravene the majority opinion's reading of § 62.13(5).

[13] Wis. Stat. § 59.26(8)(b)5m.

sustain the chief's accusation that he failed to successfully complete the probationary period. The majority opinion concludes that the phrase "disciplinary actions against subordinates" refers to the grounds for the disciplinary action. It is equally defensible, however, to read the phrase to establish instead the forms of punishment for an officer—that is, the types of disciplinary actions (suspension, demotion, or removal) that might be taken against an officer and the procedure for taking them.

¶ 89. Indeed, courts in Wisconsin have divided over the proper interpretation of this statute. In *Kaiser v. Board of Police & Fire Commissioners,* 104 Wis. 2d 498, 311 N.W.2d 646 (1981), this court held that § 62.13(5) applies to disciplinary actions, not to decisions to terminate probationary new hires as not suited for service as a police officer.[14] More recently, in *Hussey v. Outagamie County,* 201 Wis. 2d 14, 548 N.W.2d 848 (Ct. App. 1996), the court of appeals rejected this interpretation as "an inaccurate characterization of the statute. A reading of s. 62.13(5) reveals that among the disciplinary choices are suspension, demotion or removal."[15]

¶ 90. The majority opinion today dismisses the *Hussey* interpretation in conclusory fashion, stating simply that whether a job action is disciplinary is not determined by the consequences of the action but by

---

[14] *Kaiser v. Bd. of Police & Fire Comm'rs,* 104 Wis. 2d 498, 503, 311 N.W.2d 646 (1981).

[15] *Hussey v. Outagamie County,* 201 Wis. 2d 14, 20, 548 N.W.2d 848 (1996).

whether a "charge" is filed by the chief to impose the "penalty."[16] I cannot agree that this interpretation carries the day.

¶ 91.  The first line of Wis. Stat. § 62.13(5)(a) grants permission to suspend a subordinate as a penalty. It says nothing about the grounds for suspension, only that suspension is a permissible form of penalty. The second line adds, "the subordinate may also be suspended by the commission pending the disposition of charges filed against the subordinate."[17] Again, the statute references a procedure for disciplining, not what type of behavior creates the grounds for taking that action.

¶ 92.  In addition, Wis. Stat. § 62.13(5m)(c) further supports the *Hussey* interpretation that "disciplinary" refers to methods of discipline and not reasons for discipline. Subsection (5m)(c) was enacted at the same time as subsection (5)(em) and reads as follows:

> [T]he name of *a subordinate dismissed for any just cause set forth in this section* shall be left on an eligible reemployment list for a period of 2 years after the date of dismissal, *except that if the dismissal was for disciplinary reasons* the subordinate may not be left on an eligible reemployment list.[18]

The language of § 62.13(5m)(c) suggests that dismissals for "disciplinary reasons" are merely a subset of all just cause dismissals under § 62.13. The implication, therefore, is that § 62.13 addresses the methods for disciplining a police officer, not the grounds for disciplining him

---

[16] Majority op., ¶ 65 n.19.

[17] Wis. Stat. § 62.13(5)(a).

[18] Wis. Stat. § 62.13(5m)(c) (emphasis added).

529

or her. Those methods of discipline include the reduction in rank that Kraus was subject to in the present case.

¶ 93.   I thus conclude that the language of Wis. Stat. § 62.13(5) is not clear. It can be read to support Kraus's interpretation, providing officers reduced in rank for nondisciplinary reasons with a just cause hearing, as easily as it can be read to support the majority opinion.

¶ 94.   None of this means, however, that the outcome of this case is unclear. It is a general maxim of statutory interpretation that when a statute is capable of two different, reasonable constructions, courts should avoid that construction which works an absurd or unreasonable result.[19] The result of the majority opinion's interpretation here is unreasonable, and thus must be avoided, because it eliminates just cause hearings for all police officers reduced in rank during a period of probation despite the conclusion in *Antisdel* that officers reduced in rank for disciplinary reasons during a period of probation are entitled to just cause hearings under Wis. Stat. § 62.13(5)(em).

¶ 95.   That is, the result of the majority opinion is that no police officer who is promoted contingent upon the successful completion of a period of probation will ever receive a just cause hearing under Wis. Stat. § 62.13(5)(em) when that promotion is denied before completion of the period of probation, since police chiefs and PFCs will be able to avoid a just cause hearing by simply labeling the reason for the reduction in rank "nondisciplinary."

---

[19] *Jadair Inc. v. U.S. Fire Ins. Co.*, 209 Wis. 2d 187, 195, 562 N.W.2d 401 (1997); *Braun v. Wis. Elec. Power Co.*, 6 Wis. 2d 262, 268, 94 N.W.2d 593 (1959).

¶ 96.   In the present case, for example, the police department informed Kraus and the PFC that Kraus did not successfully complete probation without offering a specific reason for his failure. The court accepts the absence of a reason as a "nondisciplinary" reason without hesitation despite the fact that Kraus asserts his demotion might not have been due to poor job performance.[20] Indeed, Kraus argues in his briefs that he should at a minimum get a hearing to determine whether the negative job action was taken for disciplinary or non-disciplinary reasons. The majority opinion does not even afford him this remedy.

¶ 97.   Any line this court might hope to draw between disciplinary reasons and nondisciplinary reasons for reduction in rank is illusory. Any rule violation, of course, is also going to be evidence of poor performance; any penalty imposed for misconduct will provide grounds for concluding that an officer "has not successfully completed the probationary period for regular promotion." The illusion of a discernable distinction is especially deceptive where the court forecloses the possibility of further inquiry into the underlying facts and willingly accepts the chief's stated reason for a reduction in rank at face value.[21]

---

[20] Kraus asserts that the police chief characterized the reason for a reduction in rank as nondisciplinary only after the this court's decision in *Antisdel v. Oak Creek Police & Fire Commission,* 2000 WI 35, 234 Wis. 2d 154, 609 N.W.2d 464, was released.

[21] The same problem arises in the companion case released today, *City of Madison v. WERC.* The firefighter in *WERC* argued in his brief that his reduction in rank was the result of a "heated discussion" he had with a superior, the letter from the chief informing him of the reduction in rank is silent on the reason, and the hearing examiner employed to resolve the

¶ 98. The majority opinion itself even acknowledges the difficulty of drawing a line between disciplinary cases and nondisciplinary cases, yet fails to tackle the difficulty it creates.

¶ 99. The majority opinion explains that in *Eastman v. City of Madison*, 117 Wis. 2d 106, 342 N.W.2d 764 (Ct. App. 1983), the court of appeals held that the decision to remove two municipal employees who violated Madison's residency ordinance was not disciplinary in nature. After noting that the *Eastman* decision pre-dates the current version of Wis. Stat. § 62.13(5), the majority opinion then concludes ambiguously: "[T]he question of whether non-residency, in violation of a specific rule or ordinance, would today require a § 62.13(5)(em) hearing, is a closer question."[22] The majority opinion provides no guidance for distinguishing between disciplinary reasons and nondisciplinary reasons should the *Eastman* facts present themselves again.

¶ 100. As Kraus argues, a police chief will now always be expected to argue that a reduction in rank or any other negative job action resulting in the loss of a promotion during a period of probation was due to nondisciplinary reasons. The majority opinion not only denies a just cause hearing to promoted officers reduced in rank for nondisciplinary reasons, it also denies those officers a hearing to determine whether the nondisci-

dispute held that it was an open question as to whether the revocation of his probationary status constituted "appropriate discipline for the violation of a work rule." Although both parties conceded that the reduction in rank was due to nondisciplinary reasons, the facts of *City of Madison v. WERC* provide an example of the potential for the decision in the present case to be applied with broad strokes to difficult facts.

[22] Majority op., ¶ 65 n.20.

plinary reason is a mere pretext for a "disciplinary" reason. Consequently, the court actually holds today that no police officer who is promoted contingent upon the successful completion of a period of probation will ever receive a just cause hearing under § 62.13(5)(em) when that promotion is denied before completion of the period of probation. This court's decision in *Antisdel* is thus effectively overruled and just cause hearings (and arbitration) for officers reduced in rank during a period of probation have been entirely eliminated.

¶ 101. By the two decisions released today, this court has eliminated the protections extended by the legislature to employees of our municipal police and fire departments who have been promoted contingent upon completion of a period of probation. Wisconsin Stat. § 13.93(2)(d) requires the revisor of statutes to report to the law review committee of the legislature those decisions of this and other courts "in which Wisconsin statutes or session laws are stated to be in conflict, ambiguous, anachronistic, unconstitutional or otherwise in need of revision."[23] I suggest that the just cause provisions of Wis. Stat. § 62.13 are in need of legislative oversight.

¶ 102. For the foregoing reasons, I dissent.

_____

[23] Wis. Stat. § 13.93(2)(d).