MILWAUKEE POLICE ASSOCIATION and
David Grycowski, Petitioners-Appellants,†

v.

Edward FLYNN, Chief of Police, Board of Fire
and Police Commissioners of the City of
Milwaukee and City of Milwaukee,
Respondents-Respondents.

Court of Appeals

*No. 2010AP2254. Submitted on briefs May 3, 2011.
—Decided June 14, 2011.*

2011 WI App 112

(Also reported in 801 N.W.2d 466.)

† Petition for Review denied 12/1/2011.

On behalf of the petitioners-appellants, the cause was submitted on the briefs of *Jonathan Cermele* of *Cermele & Associates, S.C.*, of Milwaukee.

On behalf of the respondents-respondents, the cause was submitted on the brief of *Grant F. Langley*, city attorney, and *Maurita Houren*, assistant city attorney.

Before Curley, P.J., Fine and Brennan, JJ.

¶ 1. CURLEY, P.J. The Milwaukee Police Association and David Grycowski (collectively, "Grycowski") appeal an order affirming a decision of the Board of Fire and Police Commissioners of the City of Milwaukee in which the Board[1] determined that Grycowski was not entitled to a "just cause" hearing pursuant to WIS. STAT. § 62.50 (2009–10)[2] to contest being placed on an unpaid leave of absence under the federal Family Medical Leave Act ("FMLA"). Grycowski argues that § 62.50—which provides that no police officer may be suspended unless the Board determines, following a hearing, there is "just cause" for doing so—applies to unpaid FMLA leave and that the Board and trial court consequently erred in denying him a "just cause" due process hearing and in failing to provide him with continued pay and benefits pending a hearing before the Board. Grycowski also argues, in the alternative, that the Chief of Police improperly placed him on FMLA leave instead of disciplining him for "idling and loafing" in order to bypass the due process review mandated by § 62.50. We do not agree. Section 62.50 applies to disciplinary proceedings, and there is nothing in the statutory language or in the context of the statute that suggests that it applies to unpaid FMLA leave. Moreover, the terms of Grycowski's FMLA are at odds with the procedural framework of § 62.50, and Grycowski was not "disciplined" as contemplated by the statute. We therefore hold that Grycowski was neither entitled to a "just

---

[1] Except when referring to the Board of Fire and Police Commissioners ("Board") or Edward Flynn—Chief of Police, individually, we refer to Edward Flynn—Chief of Police, the Board of Fire and Police Commissioners of the City of Milwaukee, and City of Milwaukee collectively as "Respondents."

[2] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

cause" due process hearing nor pay and benefits pending such a hearing. We further decline to consider Grycowski's alternative argument, that the Chief placed Grycowski on FMLA leave in order to circumvent Grycowski's statutory due process rights, because it lacks sufficient support from the record. We affirm.

## I. BACKGROUND.

¶ 2. Due to a work-related spinal injury Grycowski suffered just two years into his policing career, Grycowski spent most of his time employed with the Milwaukee Police Department working "limited duty" assignments. Grycowski's most recent assignment—begun in September 2005—was with the Department's Central Records Division, where he entered data for all stolen and recovered vehicles. His immediate supervisor was administrative specialist senior Drita M. Spahiu. The commanding officer was deputy inspector Mary Hoerig.

¶ 3. Unfortunately, the prescribed medications Grycowski took to alleviate pain from his spinal injury began to interfere with his ability to stay awake and alert at work. In May 2009, Spahiu reported that on several occasions during the past four months she had found Grycowski sleeping at his work station. Spahiu reported that on these occasions, she would wake up Grycowski and tell him he could not sleep at work; Grycowski would reply that his inability to stay awake was due to the medication he was taking. Hoerig also observed Grycowski sleeping on duty on several occasions.

¶ 4. Grycowski attempted to alleviate the problem by changing his medications and by changing the times that he took his medications. He also explained to

498

Spahiu in June 2009 that, despite his problems with drowsiness, he preferred his current position over being transferred—an option he discussed with Milwaukee Police Department Health and Safety Coordinator Lieutenant Mercedes Cowan—because his current position allowed him the "least amount of discomfort."

¶ 5. Despite Grycowski's attempts to alleviate the problem, his on-the-job drowsiness persisted. On August 19, 2009, Spahiu noted, in a report titled, "In the matter of Idling and Loafing—P.O. David Grycowski," that Grycowski had again fallen asleep on the job for at least the second time that week:

> At approximately 9:24[ ]a.m., I approached P.O. David Grycowski at his workstation and found him sleeping . . . . I woke [him] up . . . and I observed that his eyes were red. I informed P.O. Grycowski that he was currently idling and loafing and that he would have to find a way to stay awake. I offered that he could go home sick, unpaid, if he so chose to but I was not ordering him to do so . . . . It should [also] be noted that on Monday, August 17, 2009, P.O. Grycowski was found sleeping at his workstation several times throughout the day. Due to his inability to stay awake he was sent home, paid sick leave, 2.0 hours.

(Punctuation added.) Additionally, Lieutenant Cowan observed Grycowski sleeping at his desk on August 24, 2009.

¶ 6. Consequently, the Department scheduled a "fitness for duty" examination for Grycowski with Dr. Theodore Bonner. It did so pursuant to Department Rule 450.00, which provides:

> Any member of the Department may be ordered to submit to an examination, at any time, to determine whether a member is physically, mentally, or emotion-

ally fit for the proper performance of duties. A medical doctor, licensed clinical psychologist or a psychiatrist may conduct the aforementioned examination.

¶ 7. Dr. Bonner sent Lieutenant Cowan a preliminary report dated August 27, 2009, and a full report dated September 2, 2009,[3] in which he advised that Grycowski was "permanently disabled from performing the job functions of a police officer, including limited duty assignments." (Punctuation added.) Dr. Bonner listed several reasons for Grycowski's incapacitation, including constant pain from his lumbar disc disease, anxiety attacks, depression, post-traumatic stress disorder, disturbed and fragmented sleep resulting from being sedated during the day, and untreated sleep apnea. Dr. Bonner further opined:

> Mr. Grycowski is unable to function in any job which requires alertness and mental focus. He is also unable

---

[3] We disagree with Grycowski's implication that Dr. Bonner's reports were inappropriately altered. Specifically, we disagree with Grycowski's contention—located in the "Statement of Facts" portion of his brief—that "*Dr. Bonner changed his opinion*" between August 27 and September 2, 2009. (Emphasis in original.) Rather, as the record clearly indicates, Dr. Bonner's August 27 report was merely a preliminary report. In pertinent part, the August 27 report states:

> Based on the information currently available, it is my opinion to a reasonable degree of medical certainty that Mr. Grycowski requires the following interim medical restrictions. These restrictions should remain in effect *until my final report is completed. That will be done once I have received the medical records from Mr. Grycowski's treating physicians.*

(Emphasis added.) Dr. Bonner's September 2 report similarly indicates, "[t]his report was delayed until medical records could be obtained from Mr. Grycowski's treating physicians." We caution counsel that affirmatively misrepresenting the record is grounds for sanctions. *See* WIS. STAT. RULE 809.83(2).

to perform tasks, such as reading homicide reports, which exacerbate his post-traumatic stress disorder. In addition, he is unable to perform activities which require lifting over 15 pounds, bending, twisting, or prolonged sitting.

¶ 8. A few weeks later, Grycowski attended a meeting with Lieutenant Cowan to discuss Dr. Bonner's evaluation. Cowan told Grycowski that the Police Department would allow him to take leave under the federal FMLA so that he could continue his health insurance. She advised him that under the federal FMLA, he could take up to twelve weeks of medical leave. She also told him that if his treating doctor allowed him to work before the expiration of the twelve weeks, he could return to work and be assigned to duties consistent with his medical capabilities, as indicated by his physician. She explained that all the time he took off—with the exception of eight hours—would be unpaid, however, because he only had eight hours of paid leave available as of September 16, 2009. Grycowski was placed on unpaid FMLA leave for a period of three months.

¶ 9. On September 18, 2009, Hoerig issued a report outlining the details of Grycowski's FMLA leave. In portions of the report titled, "Charged With," "Incident or Citation #," and "Date & Time of Arrest," the report stated "N/A." (Punctuation omitted.) Similarly, in the portion of the report titled, "Department Rule Violated," the reported stated "N/A." The "Facts of Incident" portion provided:

> [Grycowski] reported for a department ordered fitness for duty evaluation on August 26, 2009. He has been found unfit for duty even in a limited duty capacity and has been placed on a leave of absence. As with protocol,

> [Grycowski']s police powers are to be suspended pending a return to full, unrestricted police patrol.

(Punctuation added.) According to Grycowski's "Separation Checkout Sheet" dated September 21, 2009, the "reason for separation" was "Unpaid—Medical Leave of Absence." (Some capitalization omitted.)

¶ 10. Grycowski subsequently filed a written notice with the Board requesting a due process review of his FMLA leave pursuant to Wis. Stat. § 62.50. The Board's clerk received the notice, but replied that the appeal did not apply to the Fire and Police Commission. On September 29, 2009, in response to a demand from Grycowski's attorney, the Board's executive director formally refused to provide a due process hearing, stating:

> Police Officer Grycowski has not been suspended or placed on leave due to a disciplinary rule violation. He has been placed on administrative leave based upon a Fitness for Duty Evaluation. His police powers have been suspended. No department order has been issued for a "90 day unpaid suspension." As such, there is no appealable issue in which the Fire and Police Commission has jurisdiction.

¶ 11. Grycowski then filed a complaint in the trial court for review by certiorari, seeking adjudication that Respondents violated Wis. Stat. § 62.50 by failing to provide Grycowski with a "just cause" due process hearing and by failing to provide Grycowski with continued pay and benefits while suspended pending a due process hearing before the Board. The trial court issued a decision in Respondents' favor, concluding that the Board had no obligation to provide a due process review. Grycowski now appeals.

## II. Analysis.

■

¶ 12. The primary issue before us is whether Grycowski was entitled to a "just cause" due process hearing under Wis. Stat. § 62.50 when he was placed on unpaid FMLA leave. This is a statutory construction question that we review *de novo. See Stuart v. Weisflog's Showroom Gallery, Inc.*, 2008 WI 22, ¶ 11, 308 Wis. 2d 103, 746 N.W.2d 762.

¶ 13. Our standard of review does not depend on whether the trial court interpreted the issue via certiorari review or as a declaratory judgment. *See Kraus v. City of Waukesha Police and Fire Comm'n*, 2003 WI 51, ¶ 10, 261 Wis. 2d 485, 662 N.W.2d 294 (whether Board proceeded on a correct theory of law when it determined not to apply Wis. Stat. § 62.13(5) is question of law); *see also American Transmission Co., LLC v. Dane Cnty.*, 2009 WI App 126, ¶ 8 n.5, 321 Wis. 2d 138, 772 N.W.2d 731 ("The appropriateness of the court's declaratory judgment in this case depends upon the proper construction of a statute, which presents a question of law, where, as here, the facts are undisputed."). Thus, although the parties quibble over whether the trial court's use of certiorari review was appropriate, we do not decide that question because it is not necessary for us to do so. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) (cases should be decided on narrowest possible ground).

■

¶ 14. Our inquiry " 'begins with the language of the statute.' " *See State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted). We give statutory language "its common, ordinary, and accepted meaning,"

and give "technical or specially-defined words or phrases" "their technical or special definitional meaning." *See id.*

■

¶ 15. We must also keep in mind that "[c]ontext is important to meaning. So, too, is the structure of the statute in which the operative language appears." *See id.*, ¶ 46. Therefore, we interpret statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *See id.*

■

¶ 16. Based on our review of the language and context of WIS. STAT. § 62.50—specifically, subsections (11)-(19), which are relevant to our review—we conclude that a "just cause" due process hearing is required only when a police officer (or firefighter) has been disciplined.

¶ 17. For example, WIS. STAT. § 62.50 (11)-(16), when read together, describe a process relating to the discipline of an officer. Those subsections provide:

**(11)** DISCHARGE OR SUSPENSION. No member of the police force or fire department may be discharged or suspended for a term exceeding 30 days by the chief of either of the departments except for cause and after trial under this section.

**(12)** TRIAL TO BE ORDERED. Whenever complaint against any member of the force of either department is made to the chief thereof, the chief shall immediately communicate the same to the board of fire and police commissioners and a trial shall be ordered by the board under this section.

**(13)** The chief discharging or suspending for a

504

period exceeding 5 days any member of the force shall give written notice of the discharge or suspension to the member and, at the same time that the notice is given, and shall also give the member any exculpatory evidence in the chief's possession related to the discharge or suspension. The chief shall also immediately report the notice of the discharge or suspension to the secretary of the board of fire and police commissioners together with a complaint setting forth the reasons for the discharge or suspension and the name of the complainant if other than the chief. Within 10 days after the date of service of the notice of a discharge or suspension order the members so discharged or suspended may appeal from the order of discharge or suspension or discipline to the board of fire and police commissioners, by filing with the board a notice of appeal in the following or similar form:

To the honorable board of fire and police commissioners:

Please take notice that I appeal from the order or decision of the chief of the . . . department, discharging (or suspending) me from service, which order of discharge (or suspension) was made on the . . . . day of . . . ., . . . . (year).

**(14)** COMPLAINT. The board, after receiving the notice of appeal shall, within 5 days, serve the appellant with a copy of the complaint and a notice fixing the time and place of trial, which time of trial may not be less than 60 days nor more than 120 days after service of the notice and a copy of the complaint.

**(15)** NOTICE OF TRIAL. Notice of the time and place of the trial, together with a copy of the charges preferred shall be served upon the accused in the same manner that a summons is served in this state.

**(16)** TRIAL; ADJOURNMENT. The board may grant the accused or the chief an adjournment of the trial or investigation of the charges, for cause, not to exceed 15

505

days. In the course of any trial or investigation under this section each member of the fire and police commission may administer oaths, secure by its subpoenas both the attendance of witnesses and the production of records relevant to the trial and investigation, and compel witnesses to answer and may punish for contempt in the same manner provided by law in trials before municipal judges for failure to answer or to produce records necessary for the trial. The trial shall be public and all witnesses shall be under oath. The accused shall have full opportunity to be heard in defense and shall be entitled to secure the attendance of all witnesses necessary for the defense at the expense of the city. The accused may appear in person and by attorney. The city in which the department is located may be represented by the city attorney. All evidence shall be taken by a stenographic reporter who first shall be sworn to perform the duties of a stenographic reporter in taking evidence in the matter fully and fairly to the best of his or her ability.

(Ellipses in original.) Specifically, subsections (12)-(14) refer to or describe the process by which one files a "complaint" against an officer. *See* Wis. Stat. § 62.50(12)-(14). And subsection (16) specifically refers to the complained of officer as an "accused." *See id.* The use of this language, combined with the process of providing the accused officer with a formal complaint and trial, clearly demonstrates that the procedures outlined in those sections are to be utilized when an officer has been disciplined. *See Kalal*, 271 Wis. 2d 633, ¶¶ 45–46.

¶ 18. Wisconsin Stat. § 62.50(17), which repeatedly references "charges" against an "accused" officer, is even more persuasive in this respect. It provides:

Decision, standard to apply.

(a) *Within 3 days after hearing the matter the board,* or a 3–member panel of the board, *shall,* by a majority

506

vote of its members and subject to par. (b), *determine whether* by a preponderance of the *evidence the charges are sustained. If* the board or panel determines that the *charges are sustained, the board shall* at once *determine whether* the good of the service requires that *the accused be permanently discharged or be suspended* without pay for a period not exceeding 60 days or reduced in rank. *If the charges are not sustained the accused shall be immediately reinstated* in his or her former position, without prejudice. The decision and findings of the board, or panel, shall be in writing and shall be filed, together with a transcript of the evidence, with the secretary of the board.

(b) *No police officer may be suspended,* reduced in rank, suspended and reduced in rank, or discharged by the board *under sub. (11), (13) or (19), or under par. (a), based on charges filed by the board,* members of the board, an aggrieved person or the chief under sub. (11), (13) or (19), or under par. (a), *unless the board determines whether there is just cause,* as described in this paragraph, to sustain the charges. In making its determination, the board shall apply the following standards, to the extent applicable:

1. Whether the subordinate could reasonably be expected to have had knowledge of the probable consequences of the alleged conduct.

2. *Whether the rule or order that the subordinate allegedly violated is reasonable.*

3. *Whether the chief, before filing the charge against the subordinate, made a reasonable effort to discover whether the subordinate did in fact violate a rule or order.* SU224. Whether the effort described under subd. 3. was fair and objective.

5. *Whether the chief discovered substantial evidence that the subordinate violated the rule or order as described in the charges* filed against the subordinate.

507

6. Whether the chief is applying the rule or order fairly and without discrimination against the subordinate.

7. Whether the proposed discipline reasonably relates to the seriousness of the alleged violation and to the subordinate's record of service with the chief's department.

(Emphasis added.) Both part (a), which dictates the applicable burden of proof for just cause hearings, and part (b), which outlines the factors the Board should consider when determining whether to suspend or discharge a police officer, clearly and unambiguously refer to "charges" made against an officer. As our supreme court explained in *Kraus*, 261 Wis. 2d 485, ¶ 64, the term "charges" relates to wrongdoing or an accusation of wrongdoing, not simply a determination that a person is unfit for a particular position:

> The term "charges" commonly denotes an accusation of misconduct or of a violation of laws, rules, or policies. The contextually relevant dictionary definition of the term is "a claim of wrongdoing; an accusation." Evaluating a person's job performance as unsatisfactory or not up to expectation, or otherwise *determining that a person is not fully suited to a* supervisory *position, is quite different from "charging" a person with some breach of duty or violation of a rule or order.*

(Emphasis added; citation omitted.) Additionally, the list of factors in § 62.50(17)(b) all relate to some sort of wrongdoing or an allegation of wrongdoing against an officer. Indeed, several of these factors describe "rule" "violat[ions]." *See id.* The message sent by § 62.50(17) is clear—"just cause" due process hearings are to be conducted when an officer has been suspended based on accusations of wrongdoing—in other words, when an officer has been disciplined.

508

¶ 19. Similarly, WIS. STAT. § 62.50(18)-(19), which allow an officer who is subject to the hearing process outlined in § 62.50(11)-(17) pay during suspension and describe the process by which an aggrieved person may file charges against an officer, also refer, respectively, to "charges" against an "accused" officer. *See § 62.50(18)-(19)*. In sum, the only conclusion we can draw from the form and language of the relevant portions of WIS. STAT. § 62.50 is that they refer to a *disciplinary* procedure.

¶ 20. Our conclusion is supported by *Kraus*, in which our supreme court determined that WIS. STAT. § 62.13(5), which is similar in form and function to WIS. STAT. § 62.50(11)-(19),[4] allows an officer a due process hearing only when disciplined. *See Kraus*, 261 Wis. 2d 485, ¶ 68. In *Kraus*, an officer who was subject to a one-year probationary period to be promoted to sergeant requested a "just cause" due process hearing pursuant to § 62.13(5) when, following the probationary period, the chief of police notified him that he had failed to successfully complete the probation and "not become a regular-status police sergeant but instead be reappointed as a patrol officer." *Kraus*, 261 Wis. 2d 485, ¶¶ 6–7. The supreme court held that the officer was not entitled to a hearing under § 62.13(5) because the statute applied only to *disciplinary* actions, and the officer was not disciplined within the meaning of the statute. *Kraus*, 261 Wis. 2d 485, ¶¶ 63–67. This conclusion was grounded in the title and purpose of the statute as well as its numerous references to "charges,"

---

[4] WISCONSIN STAT. § 62.50 applies to police and fire departments in first class cities, whereas WIS. STAT. § 62.13 applies to police and fire departments in all cities other than first class cities. *See* WIS. STAT. § 62.03(1) (excepting first class cities from most provisions of WIS. STAT. ch. 62); § 62.50 ("**Police and fire departments in 1st class cities**").

which, as noted, denote "an accusation of misconduct or of a violation of laws, rules, or policies." *See id.*, ¶¶ 64–65. The supreme court further explained, "[e]valuating a person's job performance as unsatisfactory or not up to expectation, or otherwise determining that a person is not fully suited to a supervisory position, is quite different from 'charging' a person with some breach of duty or violation of a rule or order." *Id.*, ¶ 64.

· ¶ 21. On the other hand, neither the language nor context of Wis. Stat. § 62.50 suggest that a "just cause" due process hearing is required when an officer's police powers have been suspended due to the officer taking FMLA leave. Although Grycowski argues that § 62.50(13), which provides an officer the right to appeal an "order of discharge or suspension or discipline," *see id.*, allows for appeals from non-disciplinary suspensions, for all of the reasons we explained above, his argument is not supported by the statutory language in its entirety. *See Kalal*, 271 Wis. 2d 633, ¶ 46. Additionally, at no point in the relevant subsections— indeed, at no point in the entire statute—is FMLA leave, medical leave, or any other kind of leave due to illness mentioned by name or even described.

¶ 22. Moreover, as the trial court noted, the terms of Grycowski's FMLA leave were at odds with the procedures described in Wis. Stat. § 62.50. Grycowski's leave was triggered by Dr. Bonner's examination, and it would have ended at any point had Grycowski's treating physician allowed him to return to work.

¶ 23. Furthermore, Grycowski was not "disciplined" as contemplated by Wis. Stat. § 62.50. We disagree with Grycowski's contention that he was constructively disciplined for "idling and loafing" and that he was consequently "suspended." While Spahiu did

title her August 19, 2009 report, "In the matter of Idling and Loafing—P.O. David Grycowski," the content of the report makes clear that her overwhelming concern was Grycowski's health and well-being, not whether he had followed the rules. Similarly, while Hoerig's September 18, 2009 report outlining the details of Grycowski's FMLA leave did state that Grycowski's police powers were "suspended," the report clearly and unequivocally stated that he was being placed on FMLA leave because he was found unfit for duty per his evaluation. As noted, in portions of the report titled, "Charged With," "Incident or Citation #," and "Date & Time of Arrest," the report stated "N/A," which we understand to be an abbreviation for "not applicable." Similarly, in the portion of the report titled, "Department Rule Violated," the reported stated "N/A." Also, according to the "Separation Checkout Sheet" dated September 21, 2009, the "reason for separation" was "Unpaid—Medical Leave of Absence." (Some capitalization omitted.)

¶ 24. Therefore, because WIS. STAT. § 62.50 applies only to disciplinary actions, not FMLA leave, and because Grycowski was not disciplined but was instead placed on FMLA leave pursuant to Dr. Bonner's fitness for duty evaluation, we hold that he was not entitled to a "just cause" due process hearing under the statute. We further hold that because § 62.50 does not apply in this case, Grycowski was not entitled to pay and benefits pursuant to § 62.50(18)[5] pending the Board's review of

---

[5] WISCONSIN STAT. § 62.50(18) provides:

SALARY DURING SUSPENSION. No chief officer of either department or member of the fire department may be deprived of any salary or wages for the period of time suspended preceding an investigation or trial, unless the charge is sustained. No member of the police force may be suspended under sub. (11) or (13) without pay or

his claim. Contrary to what Grycowski argues, the *Sliwinski* cases that he cites—*see Sliwinski v. Board of Fire and Police Comm'rs of the City of Milwaukee*, 2006 WI App 27, 289 Wis. 2d 422, 711 N.W.2d 271 (*Sliwinski I*); *Milwaukee Police Ass'n, Local 21, IUPA, AFL-CIO v. City of Milwaukee*, 2008 WI App 119, 313 Wis. 2d 253, 757 N.W.2d 76 (*Sliwinski II*)—are not analogous because they involved a police officer who was fired upon accusations of wrongdoing, not someone who was merely placed on FMLA leave for medical reasons. *See Sliwinski I*, 289 Wis. 2d 422, ¶¶ 1–5, 9; *Sliwinski II*, 313 Wis. 2d 253, ¶ 2. Because Grycowski was neither entitled to a hearing nor benefits, neither the Board nor the trial court erred as a matter of law in denying Grycowski the hearing and benefits he requested.

¶ 25. As a secondary matter, Grycowski argues, in the alternative, that the Chief of Police improperly placed him on FMLA leave instead of disciplining him for "idling and loafing" in order to bypass the due process review mandated by Wis. Stat. § 62.50. Grycowski's support for this conspiracy theory is the mere fact that the Chief of Police has disciplined officers for various matters—including "idling and loafing"—more than six dozen times during his career. This information does not support Grycowski's claim, however, because, as the trial court concluded, Grycowski "failed to show that any other officer charged with idling and loafing had failed a fitness for duty evaluation, which was the basis for Grycowski's leave." We further note that Grycowski points to no evidence in the record even suggesting that the Chief was attempting to circumvent the statutory mandates of § 62.50 by

benefits until the matter that is the subject of the suspension is disposed of by the board or the time for appeal under sub. (13) passes without an appeal being made.

placing Grycowski on FMLA leave. Grycowski does not dispute any part of Dr. Bonner's report, which unequivocally stated that Grycowski was not fit for police work. Nor does he dispute the fact that he could have gone off FMLA at any time had his physician cleared him for duty. Grycowski provides no evidence of improper motives. The facts of this case are not the stuff of prime-time drama. Rather, Grycowski was simply too ill to work, and the Police Department placed him on leave such that he could return if and when he recovered. We find Grycowski's claim of impropriety on behalf of the Chief to be insufficiently developed and will therefore not consider it. *See State v. McMorris*, 2007 WI App 231, ¶ 30, 306 Wis. 2d 79, 742 N.W.2d 322 (Court of appeals "may choose not to consider arguments unsupported by references to legal authority, arguments that do not reflect any legal reasoning, and arguments that lack proper citations to the record.").

¶ 26. Based on the forgoing, we affirm the trial court's order.

*By the Court.*—Order affirmed.