# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:        2018AP1621

†Petition for Review Filed

Complete Title of Case:

> STATE OF WISCONSIN EX REL. BRYAN W. MASSMAN
> AND RYAN M. MOST,
>
> †PETITIONERS-APPELLANTS,
>
> V.
>
> CITY OF PRESCOTT, CITY OF PRESCOTT POLICE COMMISSION AND
> ROBERT S. FUNK,
>
> RESPONDENTS-RESPONDENTS.

| | |
|---|---|
| Opinion Filed: | December 17, 2019 |
| Submitted on Briefs: | April 2, 2019 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Seidl, JJ. |
| Concurred: | |
| Dissented: | |

Appellant
ATTORNEYS:        On behalf of the petitioners-appellants, the cause was submitted on the briefs of *Matthew A. Biegert* and *Allyson M. Moore* of *Doar, Drill & Skow, S.C.*, New Richmond.

Respondent
ATTORNEYS:        On behalf of the respondents-respondents, the cause was submitted on the brief of *Sven W. Strutz*, *Jerilyn Jacobs* and *Fred L. Morris* of *Weld Riley, SC*, Eau Claire.

**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**December 17, 2019**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP1621**

**STATE OF WISCONSIN**

Cir. Ct. No. 2017CV209

**IN COURT OF APPEALS**

---

STATE OF WISCONSIN EX REL. BRYAN W. MASSMAN
AND RYAN M. MOST,

    PETITIONERS-APPELLANTS,

V.

CITY OF PRESCOTT, CITY OF PRESCOTT POLICE COMMISSION
AND ROBERT S. FUNK,

    RESPONDENTS-RESPONDENTS.

---

APPEAL from a judgment of the circuit court for Pierce County: JAMES DUVALL, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Seidl, JJ.

¶1 HRUZ, J. Bryan Massman and Ryan Most appeal a judgment dismissing their claims against the City of Prescott, the City of Prescott Police Commission, and police chief Robert Funk (collectively, the City). Most and

Massman were terminated from their employment as police officers during the eighteen-month probationary period for new hires established by the applicable collective bargaining agreement. They assert that as a matter of contract they could be terminated only for just cause. Most additionally argues that he was entitled to statutory protection against termination without just cause because he had served on a probationary basis for more than one year. Together, they assert the City deprived them of notice of the reasons for their termination and a hearing at which they could challenge whether those reasons met the "just cause" standard.

¶2      We conclude that the "just cause" protections under the applicable collective bargaining agreement do not apply to new officers who have not yet completed the initial probationary period set forth in the contract. We further conclude that, under longstanding precedent, Most is not entitled to the protections against termination afforded by WIS. STAT. § 62.13(5)(em) (2017-18).[1]      In reaching that conclusion, we reject Most's argument that WIS. STAT. § 165.85(4)(a)3. limits the term of a probationary period for all recruits to one year. Accordingly, we affirm the judgment dismissing Most and Massman's complaint.

## BACKGROUND

¶3      The City hired Most as a full-time law enforcement officer on June 1, 2016. Massman was hired in the same capacity on October 17, 2016. It is undisputed that, as officers, Most and Massman were governed by a Labor

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

2

Agreement between the City and the Prescott Professional Police Association, a unit of the Wisconsin Professional Police Association (WPPA).[2] The Agreement established an eighteen-month probationary period for new hires, during which time such employees could be "discharged without recourse to the grievance procedure."

¶4    Most and Massman maintain that they never received formal written reprimands, negative job performance reviews, or disciplinary action during their tenure.  In early 2017, police chief Gary Kutkel took a leave from the police department for health reasons.   Following Kutkel's departure, Massman questioned whether department policies were being followed, including the department's vacation pay policy.  According to Massman, department leaders then began excluding him from communications and otherwise ignored him.

¶5    On August 7, 2017, the City's police commission met in closed session.  After coming out of closed session, the commission voted unanimously to appoint Funk as the City's Interim Chief of Police.  The commission also voted unanimously to "have the Interim Chief of Police handle the personnel issues as discussed in closed session."  The record does not reveal the content of the discussions that took place during the commission's closed session, but according to Funk, he was directed to "use [his] discretion and proceed as [he] found appropriate regarding Mr. Massman's and Mr. Most's employment."

---

[2] The applicable version of the Labor Agreement was in effect between January 1, 2016, and December 31, 2017.  By virtue of the Agreement, the City recognized the Association as the exclusive collective bargaining representative for all the City's full-time officers.  The explicit purpose of the Agreement was to establish hours, wages and conditions for employment, as well as the procedures for dispute resolution concerning the Agreement's interpretation and application.

¶6    The day following the commission meeting, Funk wrote to both Most and Massman that their employment was being terminated "due to ongoing job performance issues." The letters mistakenly advised that the former officers would have ten days to file a grievance regarding the termination decision.[3] Most and Massman both filed grievances, and they subsequently met with Funk and the city attorney on September 7, 2017. On September 14, the City notified Most and Massman that, because of their probationary status, they had no constitutional or statutory right to a statement of reasons for their firing, a hearing to contest their termination, or recourse to the grievance procedure established by the Agreement.

¶7    In October 2017, Most and Massman filed a complaint seeking certiorari review of their terminations. The complaint alleged the City did not have just cause for the firings, that it had breached the Agreement, and that by firing Most it had violated WIS. STAT. § 62.13 regarding disciplinary action against subordinate officers. Both parties filed dispositive motions on March 1, 2018. Most and Massman filed a "Motion for Certiorari Relief" seeking an order reinstating them to their previous positions with full back pay and benefits. The City, on the other hand, moved for summary judgment, asserting that the former officers were not entitled to certiorari review of their terminations or any form of post-termination review because the officers were at-will employees as a result of their probationary status.

¶8    The circuit court issued an oral ruling at a hearing on the motions. The court concluded the Labor Agreement unambiguously established that Most

---

[3] It is undisputed in this appeal that Most and Massman had no right to the grievance procedure set forth in the Labor Agreement.

and Massman were probationary employees and just cause was therefore not required to terminate their employment. The court determined that probationary periods for police officers were not statutorily capped at one year. The court also concluded that certiorari review of their terminations was not available to the former officers. In the alternative, the court found the Agreement ambiguous and concluded, based upon evidence extrinsic to the contract, that neither the City nor the Association intended to create any "for cause" termination rights for probationary employees. Accordingly, the court granted summary judgment in the City's favor. Most and Massman now appeal.

## DISCUSSION

¶9      Typically, our first task on appeal is to identify the applicable standard of review. Here, the parties disagree about whether we should apply the standards applicable to certiorari review or the standards applicable when reviewing a grant of summary judgment. Most and Massman argue certiorari review is appropriate, under which we review the municipality's decision using a highly deferential standard that searches for only limited categories of potential error. *See Sliwinski v. Board of Fire & Police Comm'rs of Milwaukee*, 2006 WI App 27, ¶12, 289 Wis. 2d 422, 711 N.W.2d 271. The City contends that such an exercise would be futile, as there is no reviewable municipal decision and the case was disposed of on summary judgment, which we review de novo. *See McAdams v. Marquette Univ.*, 2018 WI 88, ¶19, 383 Wis. 2d 358, 914 N.W.2d 708.

¶10     The determination of which of these standards applies is interwoven with our consideration of the merits of the former officers' claims. Ultimately, although they urge us to treat this matter as a certiorari review, the former officers agree that "neither the legal issues nor the standard of review are affected by

whether this court views the order as arising from a summary judgment motion or consideration of the merits of the request for certiorari relief."[4] For the reasons that follow, we conclude that the former officers, due to their probationary status, were not entitled to any form of certiorari review of the City's termination decision. Accordingly, the correct standard of review in this case is the one for summary judgment, which we review de novo and which must be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* WIS. STAT. § 802.08(2).

*I. Contractual Procedures Regarding Termination*

¶11 Most and Massman first assert they are entitled to relief because the City's termination of their employment violated the Labor Agreement. They acknowledge that, under Article 3 of the Agreement, they were classified as probationary employees during the relevant term of employment:

> Section 3.01 Probation: All new employees hired after October 1, 2012 shall be covered under the provisions of this Agreement, *but shall serve a one and a half year probationary period, during which the employee may be discharged without recourse to the grievance procedure*.

---

[4] We note that these types of cases often involve competing assertions as to the appropriate standard of review. For example, in *Milwaukee Police Association v. Flynn*, 2011 WI App 112, 335 Wis. 2d 495, 801 N.W.2d 466, the "parties quibble[d] over whether the trial court's use of certiorari review was appropriate." *Id.*, ¶13. Because the issue involved the officer's statutory entitlement to a "just cause" due process hearing, we concluded the issue would be reviewed de novo under either standard. *Id.*, ¶¶12-13. As here, the question of the applicable standard is somewhat academic, because a certiorari review involving whether the municipality proceeded on a correct theory of law (such as by providing sufficient constitutional or statutory protections) is also decided de novo. *Id.*, ¶13 (citing *Kraus v. City of Waukesha Police & Fire Comm'n*, 2003 WI 51, ¶10, 261 Wis. 2d 485, 662 N.W.2d 294).

(Emphases added.) The grievance procedure, in turn, is contained in Article 5, and it provides officers with a series of steps and deadlines, culminating in arbitration, for addressing "[a]ny dispute over the interpretation, application, or alleged violation of any provisions of this contract."

¶12 Article 9 sets forth the provisions related to "Discipline and Discharge." Section 9.01 broadly discusses disciplinary action against officers and states that review of such actions is available only through the grievance procedure set forth in Article 5:

> Section 9.01 – Disciplinary Action: It is the Employer's responsibility to offer and provide reasonable training and supervision, and to establish reasonable work rules. Disciplinary action may only be imposed on an employee for failing to fulfill his/her responsibilities as an employee. Any disciplinary action, or measure imposed upon an employee may be appealed through the regular Grievance Procedure.

The section immediately following this provision establishes just cause protections for employees:

> Section 9.02 – Just Cause Notification: *Employees shall not be disciplined or discharged without cause.* If the [City] feels there is just cause for suspension or discharge, the employee and the WPPA representative shall be notified in writing as soon as practical but no later than 72 hours following the discharge or suspension, that the employee has been discharged or suspended and the reason(s) therefore.

(Emphasis added.)

¶13 Most and Massman assert that the "just cause" protections of Section 9.02 apply to all employees, irrespective of whether the employee is within the probationary period. They reach this conclusion by noting that Section 3.01 states that new employees "shall be covered under the provisions of this Agreement."

7

Most and Massman assert that the meaning of the phrase "probationary period" under Section 3.01 is quite specific, defining that phrase only with respect to the availability of the grievance procedure. In other words, Most and Massman argue the effect of the "probationary period" under Section 3.01 is simply to make the grievance procedure unavailable, with all other contractual rights, including those in Article 9, remaining intact. As we explain, this interpretation is untenable.

¶14 We construe contracts as they are written. ***Tufail v. Midwest Hospitality, LLC***, 2013 WI 62, ¶29, 348 Wis. 2d 631, 833 N.W.2d 586. We give contract language its plain or ordinary meaning, consistent with what a reasonable person would understand the words to mean under the circumstances. ***Id.***, ¶28. If the terms of the contract are clear and unambiguous, we construe the contract according to its terms. ***Id.***, ¶26. If the contract language is fairly susceptible to more than one reasonable construction, the contract is ambiguous and extrinsic evidence may be used to determine the parties' intent. ***Id.***, ¶27.

¶15 One important principle in this case is that "we read a contract as a whole, to avoid the potential for ambiguity that can result if a small part of the agreement is read out of context." ***Little Chute Area Sch. Dist. v. Wisconsin Educ. Ass'n Council***, 2017 WI App 11, ¶25, 373 Wis. 2d 668, 892 N.W.2d 312. If we determine that the contract contains contradictory statements, we must attempt to harmonize them, but if it is impossible to give meaning to both parts, we must determine which part is to be given effect. ***Jones v. Jenkins***, 88 Wis. 2d 712, 723, 277 N.W.2d 815 (1979).

¶16 The premise of Most and Massman's argument is that the phrase "probationary period" in Section 3.01 must refer *only* to the general unavailability of the Agreement's grievance procedures to new employees during that time

8

period. This premise is not evident from the face of the contract. The Agreement does not include a formal definition of the term "probationary period," and the language on which Most and Massman rely regarding the unavailability of the grievance procedure is fashioned as a nonrestrictive clause. Based upon these observations, it seems reasonable to conclude there may be other contractual provisions affected by the officers' probationary status beyond the general unavailability of the grievance procedures.

¶17 Most and Massman's "probationary" employment status—and the expressed, general unavailability of grievance protocols—is fundamentally incompatible with the notion that they could be terminated only for cause. "Probation is a continuation of the hiring process." *Kaiser v. Board of Police & Fire Comm'rs of Wauwatosa*, 104 Wis. 2d 498, 504, 311 N.W.2d 646 (1981). Accordingly, our supreme court has recognized that a probationary period "is an excellent means of examining candidates and is well-suited to securing the best service available." *Id.* The termination of a probationary officer need not involve misconduct by the employee or constitute "discipline"; it may be based upon the hiring authority's evaluation of the potential officer's skill and character. *See id.*

¶18 The plain and ordinary meaning of "probation" in the employment context comports with *Kaiser*'s observations. *See Employee*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining a "probationary employee" as a "recently hired employee whose ability and performance are being evaluated during a trial period of employment"); *Probationer*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("Someone who is in a probationary period; a new hire … who is being tested for on-the-job suitability and competence.").

9

¶19    "Just cause," on the other hand, requires more than just the generalized unsuitability of the employee.  "Just cause"—at least in the statutory context, and we have no reason to question this meaning is also what is envisioned by the Agreement—exists when an officer has "violated a reasonable rule or order and should have known that the violation would have consequences, and where the chief has made a reasonable, fair, and objective effort to determine that the officer … actually committed the violation."  *City of Madison v. DWD*, 2003 WI 76, ¶16, 262 Wis. 2d 652, 664 N.W.2d 584.  The purpose of a probationary period would be defeated if we were to view Section 9.02 in isolation and declare that the City could terminate an officer only for cause within that period.  We must interpret contracts to avoid absurd or unreasonable results.  *Chapman v. B.C. Ziegler & Co.*, 2013 WI App 127, ¶11, 351 Wis. 2d 123, 839 N.W.2d 425.[5]

¶20    Our interpretation is buttressed by the very contractual limitation on which Most and Massman rely.  The grievance procedure established by the Agreement broadly covers "[a]ny dispute over the interpretation, application, or

---

[5] Most and Massman argue that, pursuant to *City of Racine v. Town of Mount Pleasant*, 61 Wis. 2d 495, 213 N.W.2d 60 (1973), we must, in essence, sever Section 9.02 from the remainder of the contract when determining whether they enjoy just cause protections.  They rely on the court's statement that "a specific provision of [a] contract establishing one obligation of that contract should not be applied in determining the other contractual obligations established by other provisions of that contract."  *Id.* at 501.

Their reading of *City of Racine* is, in fact, quite at odds with what the court actually stated.  In that case, a city attempted to retroactively collect additional amounts due under a contract for waste treatment with a town, which according to the city reflected the actual costs of past treatment.  *Id.* at 497-500.  Our supreme court faulted the circuit court for focusing solely upon the contractual provisions establishing the term of payment and the procedure for adjusting those payments, while ignoring the provision establishing the amount to be paid by the town.  *Id.* at 502.  Thus, the message of *City of Racine* is that the contract must be read as a whole, which is consistent with our conclusion here.

alleged violation of any provisions of this contract ….” A dispute regarding whether the City had cause to terminate an employee certainly falls within this procedure's ambit. Thus, even if Most and Massman are correct that the "just cause" provisions of Section 9.02 apply to them, there is no relief that could be afforded to them under the terms of the Agreement. They offer no explanation as to why the City and the Association would establish a right for a probationary employee, only to then specifically exclude them from participating in the only mechanism by which he or she could vindicate that right.[6] For the foregoing reasons, the notion that Section 9.02 establishes "just cause" protections for probationary employees is incompatible with the officers' probationary status established in the Agreement.[7]

¶21 As a corollary to their argument regarding Section 9.02, Most and Massman also assert they are entitled to constitutional procedural due process protections with respect to their termination. Although Most and Massman admit they are uncertain as to what specific "level of process" would satisfy constitutional norms (they note they received no process whatsoever), the essential principle of due process is that a deprivation of property must be preceded by

---

[6] Moreover, the Agreement dictates that arbitration is the means by which to resolve any disagreements over the interpretation and application of the Agreement's terms. Most and Massman's interpretation would produce the incongruent result that probationary employees could seek recourse to the judicial system to resolve disputes about whether a termination was with just cause, while non-probationary employees would be required to abide by the arbitration decision and could challenge it in the courts on only very limited bases. *See generally* WIS. STAT. § 788.10. This result seems incompatible with the manifest purpose of the Agreement, which was to give probationary employees *fewer* grievance rights than non-probationary employees.

[7] Because we conclude the Agreement is unambiguous, we need not address Most and Massman's assertions that the circuit court improperly considered affidavits submitted by the parties to the contract relating to their intended meaning.

notice and an opportunity for a hearing appropriate to the nature of the case. ***Milwaukee Dist. Council 48 v. Milwaukee Cty.***, 2001 WI 65, ¶48, 244 Wis. 2d 333, 627 N.W.2d 866.

¶22 Most and Massman vigorously argue for Section 9.02's applicability in part because, to be entitled to procedural due process protections, "a plaintiff generally is required to show that the terms of his [or her] employment provide for termination only 'for cause' or otherwise evince 'mutually explicit understandings' of continued employment." ***Cole v. Milwaukee Area Tech. Coll. Dist.***, 634 F.3d 901, 904 (7th Cir. 2011). As explained above, the Agreement, when read as a whole, unambiguously excluded probationary employees like Most and Massman from the category of officers for whom just cause was required to terminate employment. As a result of their probationary status, there was no mutual understanding of continued employment.

¶23 ***Kaiser*** also informs our conclusion that constitutional due process protections are unavailable to probationary employees. Indeed, the court there held that the probationary officer "did not have a constitutional right, nor statutory right, to a statement of specifications and a hearing on the City of Wauwatosa's decision not to retain him for this nontenured appointment." ***Kaiser***, 104 Wis. 2d at 506. As a probationary officer, Kaiser had "no more than a unilateral expectation" of completing his probation and being hired as a permanent officer. ***Id.*** at 505. That expectation was insufficient for procedural due process protections to attach; an employee must instead have a "legitimate claim of entitlement" to the position to give rise to a property interest warranting protection. ***Id.*** (quoting ***Regents v. Roth***, 408 U.S. 564, 577 (1972)). An officer who serves at the "will and pleasure" of the hiring authority has no expectation of keeping his or her job. ***Id.*** at 506 (quoting ***Bishop v. Wood***, 426 U.S. 341, 345

12

(1976)); *see also **Kraus v. City of Waukesha Police & Fire Comm'n***, 2003 WI 51, ¶11, 261 Wis. 2d 485, 662 N.W.2d 294 (observing that, under ***Kaiser***, probationary officers "do not have a property interest in their new positions and are usually subject to discharge during the probationary period without a statement of reasons or a determination of just cause").

*II. Statutory Procedures Regarding Termination*

¶24    Most additionally argues that, given his service time, he qualifies for statutory protection against termination without cause.[8]    Most makes specific reference to WIS. STAT. § 62.13(5)(em), which provides:

> No subordinate may be suspended, reduced in rank, suspended and reduced in rank, or removed by the [city] board [of police commissioners] under par. (e), based on charges filed by the board, members of the board, an aggrieved person or the chief under par. (b), unless the board determines whether there is just cause, as described in this paragraph, to sustain the charges.[9]

The statute identifies seven factors for the board of police commissioners to consider in making its "just cause" determination, including the reasonableness of the rule or order the subordinate allegedly violated, the adequacy of the investigation by the chief, and the proportionality of the proposed discipline.  *See* § 62.13(5)(em)1.-7.

---

[8] For reasons that will become apparent, only Most is the subject of this argument.  It is undisputed that Massman, because of his service time being less than one year, is not entitled to avail himself of the cited statutory procedures.

[9] In this context, "subordinate" includes individuals who are appointed to police officer positions by the chief of police.  *See* WIS. STAT. § 62.13(4)(a); *see also **Kaiser v. Board of Police & Fire Comm'rs of Wauwatosa***, 104 Wis. 2d 498, 503, 311 N.W.2d 646 (1981) ("As used in the statute, ['subordinate'] is a generic term including all police officers.").

¶25 Most's assertion that he is entitled to WIS. STAT. § 62.13(5) disciplinary protocols runs headlong into ***Kaiser***, which held that such mechanisms were unavailable to probationary employees. In that case, Kaiser, too, claimed he was entitled to the statutory protections enumerated in § 62.13(5). ***Kaiser***, 104 Wis. 2d at 502. The supreme court rejected his argument, stating that Kaiser "fail[ed] to recognize that he was hired as a probationary officer" under both the terms of the collective bargaining agreement with the city and the statutory provisions governing the standards for the exercise of law enforcement functions. ***Id.*** at 501-03. Notably, the supreme court treated probationary status under the contract and probationary status under the statutes as separate reasons for holding the statute inapplicable. *See **id.*** at 501-02.

¶26 To avoid ***Kaiser***, Most proposes that WIS. STAT. § 165.85(4)(a)3. limits a probationary term of employment for police officers to one year. Most argues that cases subsequent to ***Kaiser*** have "established that municipalities are not free to label employees as probationary to avoid complying with employees' statutory rights before being disciplined." Most accuses the circuit court of confusing "a municipal probationary period, which a municipality can establish in order to determine when the officer becomes vested in certain rights afforded by the municipality, and the permitted probationary procedure during which recruits may exercise law enforcement powers pursuant to the standards enforced by the Law Enforcement Standards Board."

¶27 We disagree with these assertions, beginning with the notion that WIS. STAT. § 165.85(4)(a)3. contains an explicit limitation regarding the length of a probationary period for recruits. Section 165.85 generally recognizes the public interest in establishing standards to ensure that law enforcement officers are properly trained and educated. *See* § 165.85(1). Accordingly, the statute created

the Law Enforcement Standards Board, which, among other things, has the authority to establish minimum educational and training standards for employment as a law enforcement officer and is responsible for certifying a person as being qualified for such employment. *See* § 165.85(3)(b), (c).

¶28 Most's argument centers on WIS. STAT. § 165.85(4), which requires the board to establish a minimum 600-hour preparatory program of law enforcement officer training. *See* § 165.85(4)(a)1. All persons employed as a law enforcement officer, except on a "temporary or probationary basis," must satisfactorily complete the preparatory training program and become certified by the board as being qualified to serve as an officer. Sec. 165.85(4)(a)2. Subsection (4)(a)3., the crux of Most's argument, states that "[a] recruit may exercise law enforcement powers during an original period of temporary or probationary employment that, except as provided in subd. 6 or as otherwise authorized by law, may not exceed 12 months from the recruit's first date of employment."[10]

¶29 We conclude that, by its plain terms, WIS. STAT. § 165.85(4)(a)3. does not limit the length of a probationary employment period established by a municipal contract for new law enforcement officers. Subdivision 3. refers to the period during which the recruit "may exercise law enforcement powers" without completing the preparatory training program and becoming certified by the Law Enforcement Standards Board. It does not place any explicit limitation upon the length of a probationary period that a municipality may require pursuant to a

---

[10] Under WIS. STAT. § 165.85(4)(a)6., the board may extend the recruit's original period of temporary or probationary employment upon a showing of good cause for a period of time it deems appropriate. It is undisputed that Most was never the subject of any board action under this provision.

contract with the officer or his or her bargaining representative. While it may seem incongruous for a municipality to continue employing a recruit who cannot exercise law enforcement powers, we can perceive of several reasons why both a municipality and a potential officer might benefit from such an arrangement.[11]

¶30     Indeed, WIS. STAT. § 165.85(4)(f) states that "[n]othing in this subsection shall preclude any law enforcement … agency … from setting recruit training, employment, and recertification training standards that are higher than the minimum standards set by the board." The authority to make probationary hires predates the enactment of § 165.85(4), and therefore it is not derived solely from that source. *See Kraus*, 261 Wis. 2d 485, ¶28. The supreme court has already validated the interpretation we adopt here by noting (albeit in the context of a case involving a probationary promotion) that the "statute does not *require* that newly hired law enforcement officers go through a one-year probationary

---

[11] It is not necessary, and we do not attempt, to define the permissible duties to which a recruit who is not trained and certified within one year may be assigned when a contract specifies a longer probationary period. We note, however, that the potential officer benefits from this arrangement because the municipality need not terminate the recruit if he or she does not become certified by the conclusion of the one-year period set by WIS. STAT. § 165.85(4)(a)3. A longer contractual probationary period might allow the municipality to further examine the recruit's performance in a support role, or it might provide time for the municipality and recruit to seek an extension under § 165.85(4)(a)6. that permits the recruit to exercise law enforcement powers despite the lack of certification.

*Milwaukee Police Association v. Board of Fire & Police Commissioners of Milwaukee*, 708 F.3d 921 (7th Cir. 2013), illustrates the foregoing considerations. There, the recruit was injured during a training exercise just three days into her employment. *Id.* at 924. She was assigned to clerical duties for several months while she awaited the next training class to begin, and then, just two weeks before graduating from that class, she was reinjured and again had to be placed on restricted duty. *Id.* Although she was ultimately certified by the Law Enforcement Standards Board based upon her training activities, the city board had virtually no opportunity to evaluate her performance as a police officer within the one-year period established by WIS. STAT. § 165.85(4)(a)3. *Milwaukee Police Ass'n*, 708 F.3d at 924.

period *if* they have fully satisfied state training requirements and been properly certified before they are hired." ***Id.***, ¶38. In other words, "[t]here is little doubt that WIS. STAT. § 165.85(4) effectively imposes probation on virtually all new officers in relation to their training *and also permits* [police commissions] to require probation to supplement the standards set out in the statute." ***Kraus***, 261 Wis. 2d 485, ¶27.

¶31 Notably, WIS. STAT. § 165.85(4)(a)3. previously included language much closer to the interpretation Most urges for the current version of the statute. Formerly, the statute was structured so as to place a substantive time limitation upon a probationary term of employment:

> The total period during which a person may serve as a law enforcement … officer on a temporary or probationary basis without completing a preparatory program of law enforcement training approved by the board shall not exceed 2 years, except that the board shall permit part-time law enforcement … officers to serve on a temporary or probationary basis without completing a program of law enforcement training approved by the board to a period not exceeding 3 years.

WIS. STAT. § 165.85(4)(b)1. (2011-12). That version of the statute was repealed and recreated in 2013, at which point the legislature added the "exercise law enforcement powers" language. *See* 2013 Wis. Act 214, § 19. The modification clarifying that the statute pertains only to a recruit's ability to exercise law enforcement powers strongly supports our interpretation.

¶32 We also disagree with Most's reliance on ***Antisdel v. City of Oak Creek Police & Fire Commission***, 2000 WI 35, 234 Wis. 2d 154, 609 N.W.2d

464, which was decided subsequent to *Kaiser* and under the previous version of WIS. STAT. § 165.85(4).[12] In that case, our supreme court decided that a long-time officer who had been recently promoted to sergeant on a probationary basis but reduced in rank during the probation term was entitled to a just cause procedure under WIS. STAT. § 62.13(5)(em). *Antisdel*, 234 Wis. 2d 154, ¶¶2-3. The *Antisdel* court, however, was careful to note that the collective bargaining agreement there only required a probationary period for new employees and did not establish a probationary period for officers promoted to sergeant or other supervisory positions. *Id.*, ¶¶16-17. The court also noted that the charges against the officer related to alleged misconduct prior to promotion, not to his performance as a sergeant.[13] *Id.*, ¶25. The court expressly declined to address whether the result would be the same "if the plaintiff were reduced in rank from probationary sergeant to police officer because he [or she] failed to meet the level of performance demanded by his superiors." *Id.*, ¶26. Most reads *Antisdel* far too broadly.

¶33 Our supreme court's decision in *Kraus* further undercuts Most's argument that he is entitled to the protections outlined in WIS. STAT. § 62.13(5)(em). *Kraus* held that statutory "just cause" hearing provisions are not available to an officer who is returned to his or her prior rank for failure to

---

[12] Technically, the *Antisdel* court relied upon the 1981 version of the statute discussed in *Kaiser*. *See Antisdel v. City of Oak Creek Police & Fire Comm'n*, 2000 WI 35, ¶11, 234 Wis. 2d 154, 609 N.W.2d 464 (characterizing the statute at issue in *Kaiser* as "mandating that all new police hires be subject to a probationary period not to exceed one year").

[13] The allegations of misconduct were related to a scheme to allow a colleague to use the officer's address to avoid paying nonresident tuition at a high school. *Antisdel*, 234 Wis. 2d 154, ¶¶24-25.

successfully complete a probationary period associated with a promotion. *Kraus*, 261 Wis. 2d 485, ¶3. Thus, *Kraus* clarified that the *Antisdel* rule is limited to situations in which an officer who was promoted on a probationary basis is returned to his or her prior position for disciplinary reasons unrelated to his or her performance in the new position. *Kraus*, 261 Wis. 2d 485, ¶¶12-14, 67-69. A recruit like Most, who did not complete the initial probationary term of employment as a police officer, is not entitled to avail himself of the just cause protections afforded by § 62.13(5)(em).

¶34 Most argues the foregoing rule creates a "slippery slope" whereby municipalities might attempt to circumvent state law governing certification standards by imposing years-long probationary periods. We consider it quite unlikely that municipalities would seek to employ uncertified recruits for significant periods of time without seeking an extension under WIS. STAT. § 165.85(4)(a)6. In any event, the City concedes that although it is not limited to a one-year probationary period for new hires under § 165.85(4), it may not bargain for a probationary period of whatever length it wants. The City argues that whatever concerns Most has about the potential length of probationary periods are largely mitigated by *Kraus*, which recognizes a "reasonableness" requirement in the exercise of a municipality's inherent authority to make appointments. *See Kraus*, 261 Wis. 2d 485, ¶74. Given that the probationary period in this case was only eighteen months—which no party argues was unreasonable in duration—as well as the City's concession regarding the applicability of *Kraus*'s "reasonableness" rule, we need not decide under what circumstances a municipality would go too far.

*By the Court.*—Judgment affirmed.